HUNTER, JR., Robert N., Judge.
Caroline King Grubbs ("Plaintiff") and her trial counsel John F. Morrow, Sr. ("Morrow") appeal following the trial court's imposition of Rule 11 sanctions against them, denial of a motion to continue, and denial of a motion for reassignment of judge. On appeal, Plaintiff and Morrow argue the trial court committed error in deciding to impose sanctions against them, and abused its discretion in selecting the sanctions imposed. We agree and reverse the order awarding sanctions against Plaintiff and vacate and remand the trial court's orders as to Morrow.
I. Factual and Procedural History
This case arises from a contentious domestic dispute between Plaintiff and her ex-husband, Robert Warner Grubbs, Jr. ("Defendant"). The following is a summary of the facts pertinent to this appeal.
Plaintiff and Defendant married on 9 November 1996 and had children together. They separated on 7 June 2012 and divorced on 12 August 2013. Through her trial counsel, Morrow, Plaintiff filed a verified complaint for post-separation support, alimony, child custody, child support, equitable distribution, and attorney's fees on 28 January 2013. On 22 April 2013, Defendant filed a verified answer and raised counterclaims for child custody, child support, and equitable distribution. On 21 May 2013, Plaintiff filed a verified reply.
The parties agreed to a consent order for joint legal and shared physical custody of the children, and the trial court entered the consent order on 17 July 2013. The trial court entered a memorandum of the order on 18 July 2013. On 19 November 2013, the trial court entered a consent order appointing a parenting coordinator.
On 22 January 2014, Defendant filed a motion for contempt and to show cause. On 21 February 2014, Plaintiff filed a response to the motion for contempt and alleged Defendant violated the consent custody order. On 25 February 2014, the trial court ordered Defendant to show cause for contempt for his alleged violations of the consent custody order.
On 31 July 2014, Plaintiff filed a motion seeking an order declaring Defendant is able to and, therefore, should pay for their daughter's 2014-2015 tuition at Summit School, a private school in Winston-Salem; or in the alternative, funds from the sale of the marital residence[1] should be disbursed to pay their daughter's tuition.[2] On 7 August 2014, Plaintiff filed an amended motion concerning the Summit School tuition, known as the "Summit School motion."
On 15 August 2014, Defendant moved for contempt, alleging Plaintiff violated the consent custody order by exposing the children to her disagreements with Defendant, and the trial court entered a show cause order. On 21 August 2014, Plaintiff moved for contempt, and on 22 August 2014, Judge Hartsfield entered three show cause orders alleging Defendant violated the consent custody order. The printed record does not disclose whether these four contempt motions have been completely adjudicated.
To insure a favorable position on Judge Hartsfield's calendar, Defendant's attorney calendared their motions on 8 September and 9 September, as the first case for hearing. On 8-10 September 2014, Judge Hartsfield heard the parties on the Summit School motion to determine if the parties' daughter would attend private school at Summit School or the public school, Wiley Middle School, for 2014-2015, and whether Defendant would be obligated to pay to tuition for Summit School. During this hearing, Judge Victoria Roemer, of the Forsyth County District Court, walked up to the bench and "spoke briefly" with Judge Hartsfield. The record does not disclose what Judge Roemer and Judge Hartsfield spoke about at the bench. Judge Roemer sat in the jury box and watched the proceedings. Later, Judge William Graham joined Judge Roemer in the jury box and watched alongside her. The record does not disclose what testimony Judge Roemer and Judge Graham heard. Before this, both Judge Roemer[3] and Judge Graham[4] previously recused themselves from the case.
During the hearing, while the children's counselor, Kristin Elizabeth Reiners, testified, Judge Hartsfield stated the following:
[THE COURT]: All right. So I guess my question is, how much of this did you-do you-well, I'm not going to say that-do you perceive that the child feels as though this is an issue of status, number one? Is this a status issue as far as she's concerned?
And the elephant in the room, which is always the elephant in the room to me, is how does diversity play into this? I mean, I'm just being open and out there.
I mean, I know Wiley is a school that feeds from Happy Hill Garden and some areas of the city that are completely diverse. I know that-I know Wiley is not the Wiley it was when I was in the 8th grade. It's totally integrated and totally diverse, as opposed to Summit, which has much less diversity.
Were any of those kind of issues ever discussed?
[MS. REINERS]: No. It wasn't about population or status.
Morrow called Defendant as a witness and asked about Defendant's mental health and relationship with his children. Defendant stated his daughter goes "ballistic" because of "a confluence of circumstances led by negative reinforcement from [Plaintiff]...." Morrow asked whether Defendant's relationship with his daughter was "pretty bad." Defendant answered, "No; it's not bad right now, because I have no interaction with her." Morrow asked if Defendant had seen his daughter since "an incident that occurred on July 3rd" at Defendant's home. Defense counsel objected and argued the question was relevant to child custody, not the matter of Summit School tuition. Morrow stated, "He's a very hostile witness." The trial court responded, "Well, I'm not too sure of where the hostility flows, but it's flowing." This continued as Morrow questioned Defendant about an email from Plaintiff. The transcript states the following:
[MORROW]: I would like for you to read the e-mail that you wrote to your wife-
[DEFENDANT]: "Realistically, there is no possibility"-
[MORROW]: -(Inaudible)
[DEFENDANT]: -"that I will have"-would you like me to talk or would you like to talk?
[THE COURT]: Wait....
[DEFENDANT]: [ ]Which way? You have asked me to talk.
[MORROW]: When is the last time you saw something like this in the courtroom, Judge?
[DEFENSE COUNSEL]: Okay. Objection. Move to strike.
[THE COURT]: Sustained.
[MORROW]: You have control in the courtroom-
[DEFENSE COUNSEL]: Objection.
[MORROW]: -the decorum-
...
[THE COURT]: Sustained. Sustained.
I think that decorum is a two-way street.
[DEFENDANT]: Your Honor, I apologize. I'm loud, and I'm animated and I'm irritated. And this attack's been coming for a long time.
[THE BAILIFF]: I'm going to say something to both parties real quick. We are going to be clear right now; okay?
You are going to show him respect and all of you guys are going to show these people on the stand respect. Because some of you-if it keeps up, you are going to go out a different door you came in.
During the second day of the hearing, 9 September 2014, Morrow continued to examine Plaintiff. Morrow sought to admit an email exhibit through Plaintiff, which was a response to the defense's settlement offer, and defense counsel raised multiple objections. The transcript reveals the following exchange:
[MORROW]: I'm asking you to review [the exhibit] in-camera to make your decision and make finding[s] of facts and conclusions of law on the record. I'm not trying to be stubborn about it, but that's what the rules say has to be done.
[DEFENSE COUNSEL]: I think the Judge has ruled on the objection....
And I would ask that we keep going with this, so we can get to the decision on Summit School today.
[MORROW]: While I'm thinking about it, the psychiatric records of [Defendant] that I've offered into evidence twice....
...
[DEFENSE COUNSEL]: Objection....
...
[DEFENSE COUNSEL]: Is this free time for us to do whatever we want to do?
[MORROW]: Have I interrupted her?
[THE COURT]: Yes, sir. Constantly.
But sustained.
Let's move on.
[MORROW]: I need to say this for the record. But certain things the lawyers have to do that should not make a [j]udge mad because they have to do them.
[THE COURT]: I'm not mad at all.
But, since you want to make this the free period, I will say this.
That, you know, it's real hard for me sitting up here to not feel the urge to punish your client because of your behavior. That's a thin line that all judges have to walk through.
Thereafter, defense counsel questioned Plaintiff about an email exhibit. Then, the following exchange occurred:
[DEFENSE COUNSEL]: [L]et the record reflect that Mr. Morrow is standing at the bench in front of the Judge throwing the exhibit at her.
[MORROW]: I tell you, this is a poor excuse for a courtroom.
[DEFENSE COUNSEL]: Your Honor.
[THE COURT]: What did you say, Mr. Morrow?
[MORROW]: I said it's a poor excuse for a lawyer to act like that in a courtroom.
[DEFENSE COUNSEL]: That's not what he said.
[THE COURT]: No; you didn't. You said, "This is a poor excuse for a courtroom."
[MORROW]: Well, I meant for a lawyer-
...
[DEFENSE COUNSEL]: [M]otion for him to be held in [c]ontempt of [c]ourt.
That is disrespectful.
[THE COURT]: Extremely. But I guess it's par for the course.
Thereafter, Morrow objected to a different exhibit and asked that the entire exhibit be read into evidence. The following exchange ensued:
[MORROW]: That's why I'm asking you to read all of it.
[THE COURT]: Mr. Morrow.
[MORROW]: Yes, ma'am.
[THE COURT]: Okay. We got lanes in here. It's my lane. I'm staying in it. All right? Your lane is to represent this lady. Not to instruct me or to tell me what to do. It's to stay in our lanes to get the best result we can out of this.
This spirited dialogue continued in the proceeding as follows:
[MORROW]: Your Honor, the [m]emorandum of [j]udgment-you can take judicial notice of it as far as I'm concerned, is my understanding. But I don't know how it's relevant at this point in time.
[THE COURT]: Well-
[MORROW]: It's up to you.
[THE COURT]: I didn't understand what your last part was. If you could repeat it, please.
[MORROW]: Yes. The [m]emorandum of [j]udgment is in the file. It's part of the record.
You are taking judicial notice of it; I have no objection to your taking judicial notice of it.
...
I think you have [to read it] in toto.
For instance, [Defendant] got over a $50,000.00 credit in this for his payments on the house. You have to read it in toto to understand it, please, Your Honor.
And I know you don't-
[THE COURT]: You know I don't-
[MORROW]: -you're not familiar with the [e]quitable [d]istribution case.
But this is in all of it.
[THE COURT]: You know I don't what?
[MORROW]: I said I know you're not familiar with the [e]quitable [d]istribution case-our case.
But this [m]emorandum of [j]udgment talks about a lot of money, including what is called credit for an interim distribution-meaning credit of payment on a house payment.
[DEFENSE COUNSEL]: Your Honor-
[MORROW]: So, again, I have no objection to you seeing it; but I say that you should read it all to understand it.
[THE COURT]: Mr. Morrow, I've said this once as nice as I could and I'll say it again. This is my lane. That's your lane.
[MORROW]: Yes, ma'am.
[THE COURT]: You continue to reference as if you're trying to tell me what to do. All right? I'm going to stay in my lane. All right? I'm going to stay in my lane. I know what the rules are as they relate to me. I'm going to do what the law requires me to do. If not, it will be noted.
...
[MORROW]: I'm not trying to tell you how-
[THE COURT]: No. I don't need to hear anymore.
[MORROW]: I'm sure you don't.
[THE COURT]: Beg your pardon.
[MORROW]: I said I'm sure you don't.
[THE COURT]: Continue, Mr. Morrow.
[MORROW]: I agree with you.
[THE COURT]: Continue.
[MORROW]: I agree with you.
[THE COURT]: Keep it up. Go ahead.
The next day, 10 September 2014, Judge Hartsfield met with Morrow and defense counsel to discuss lingering issues concerning child custody, child support, and the appointment of a guardian ad litem and an independent evaluator. Judge Hartsfield joked with Morrow about whether he needed a mental health examination. At the close of the hearing, Judge Hartsfield stated the following to Morrow:
[THE COURT]: -[M]y frustration comes from-maybe this is the 1950's method of communicating, you know, if you're telling somebody what to do or you are ordering. I don't know. Maybe that's just the style. Maybe that was the style then.
I take offense to it totally.
I don't think that-you know, I don't think that anybody is trying to accuse anybody of anything.
I mean, I know what I am going to order.
And, you know, your continuing to tell me, well, "You should know" or "You know" or, you know, I find that very offensive. I'm just [being] very honest with you.
[MORROW]: I'm trying to make contentions to the court.
I'm not trying to tell you you should know. I've never said anything like that.
[THE COURT]: Well, you preface that with every statement-"As the court knows" or-
[MORROW]: As the court knows.
[THE COURT]: Continue, Mr. Morrow.
[MORROW]: And I wasn't born in 1940.
[THE COURT]: I didn't say you were born [sic]. I said it was the training of the law students in the 50s and 60s is what I said. I wasn't talking about your birth. I was talking about law school training.
Go ahead.
[MORROW]: But, again, I apologize for miscommunicating.
[THE COURT]: You are not miscommunicating.
...
[THE COURT]: I think what you are trying to do is you're trying to make arguments. You're trying to get little digs in. I don't think-
[MORROW]: Absolutely not.
[THE COURT]: -I don't think you accused anybody of immoral conduct. I didn't hear that.
[MORROW]: Okay. No; I'm not. I'm not. Absolutely not.
...
[MORROW]: And, again, Judge, I just am so sorry that somehow things that I say are not understood. And I really, in the deep of my heart, mean that. If anybody likes the judicial system and the way it is set up and the way it works in this courthouse, it's me.
...
[MORROW]: When I say, "As the court knows," I'm just, in my own mind-and a lot of time the judge will say, "Yes; I'm very familiar with that case. Go to your next question" or "Go to your next subject."
And, again, I apologize for the miscommunication, Your Honor.
[THE COURT]: All right.
Subsequently, Judge Hartsfield ruled that the minor child was to attend public school rather than Summit School and Defendant, therefore, did not have to expend funds from the sale of the house for her education. This ruling ended the Summit School Motion.
On 2 October 2017, Judge Hartsfield met with counsel to discuss the costs for a guardian ad litem and a custody evaluation. Morrow was accompanied by his law partner, Natalie Vermitsky.
The parties discussed future dates for hearings and lingering orders in the case. Defense counsel stated she was out of the office 9 October 2014 and 10 October 2014, but was otherwise available. Morrow stated he was available at 2:00 p.m. on 6 October 2014 and 8 October 2014. Judge Hartsfield ordered the attorneys to appear in court at 2:00 p.m. on 6 October 2014.
Morrow did not appear at the 6 October 2014 hearing. His law partner, Katie F. Fowler, appeared and filed two motions, on Plaintiff's behalf: the first, a motion for reassignment of judge at 2:04 p.m.; and, second, a motion to continue at 2:05 p.m. The motions were not properly calendared for hearing. Morrow signed both motions, and Plaintiff verified both motions with her signature. Plaintiff asserted the following in the motion for reassignment of judge:
1. At a hearing on October 2, 2014, multiple statements were made which reasonably cause the District Court Judges of the Local 21st District's impartiality to be questioned and/or, at the very least, create an "appearance of impropriety." Said statements include the following:
a. Counsel for Defendant requested that all pending motions between the parties be placed on Judge Hartsfield's calendar.
...
b. When counsel for Plaintiff discussed calendaring the contempt motions on Judge Bedworth's calendar, Judge Hartsfield stated that there are only three judges that are eligible to hear the present cause of action, with Judge Hartsfield included as one of the three.
c. To date, only two of the eleven judges in the 21st District Court have formally recused themselves from hearing this case. Plaintiff is aware of an additional two judges who have indicated they would recuse themselves if the case came before them, leaving seven eligible judges. Upon information and belief, Judge Hartsfield's contention that there are only three eligible judges indicates there have been extensive discussions regarding this case between Judge Hartsfield and the available judges.
d. Judge Hartsfield stated that it would be improper for her to retain jurisdiction in this case.
2. [ ]During [the Summit School hearing on 8-9 September 2014] statements were made and actions taken that reasonably create an "appearance of impropriety" ... includ[ing] ... the following:
a. This case involves parties who are well known in the community at large.... [Judge] Victoria Roemer and [Judge] William Graham.... recused themselves because of their favorable relationship with Defendant and/or Defendant's family. Upon information and belief, Judge Hartsfield was aware of the judges' recusals prior to the beginning of the [Summit School] hearing.
b. During opening statements on September 8, 2014, Judge Roemer entered the courtroom and addressed Judge Hartsfield. Judge Roemer then took a seat in the jury box, where she sat for the majority of the day's hearing (with the exception of approximately one hour).
c. During the course of the September 8, 2014 hearing, Judge Graham joined Judge Roemer in the jury box for approximately one hour. Judge Hartsfield did not prevent either recused judge from sitting in on the proceedings despite their admitted bias in favor of Defendant.
3. On September 10, 2014, a second hearing was held ... issues arose that create the "appearance of impropriety." Specifically, one such exchange included the following statements made by Judge Hartsfield concerning [Morrow]:
a. "My frustration comes from-maybe this is the 1960's method of communicating, you know, if you're telling somebody what to do or you're ordering.... I find that very offensive.
...
4. Given the nature of the relationship between Judge Hartsfield and [Morrow], the statements and behaviors of the Judge during the September and October hearings, and the apparent discussions Judge Hartsfield has had regarding this case with all of the remaining judges ... Judge Hartsfield's ... continued handling of this case would tend to give the appearance of impropriety.
WHEREFORE, Plaintiff prays:
1. That an out of county judge be assigned to hear all remaining issues in this case; and
2. For such other and further relief as the Court deems just and proper.
Fowler contended the motion for reassignment necessitated a continuance because "there should be a hearing had on whether or not a conflict judge is appropriate...." She also contended the contempt and child support issues should not be heard because proper calendar notice had not been timely given for hearing on either motion. Judge Hartsfield said she was "baffled" by the motion for reassignment and recessed to ask Chief District Court Judge Lisa V. L. Menefee "to take a break and come in here and hear this [m]otion to determine whether or not we need to get a visiting judge to hear[ ] the remaining of these cases of two parties that don't work in the court to have any familiar appearance for a visiting judge." Chief Judge Menefee joined Judge Hartsfield at the bench and told Fowler, "this [is] not ... a conflict case.... There will be no visiting judge. You'll just have to choose amongst those of us who remain." Fowler explained, "we scheduled this matter for Judge Bedsworth ['s] calendar in late October, and it was moved to [to]day." Chief Judge Menefee responded, "I'm not going to hear this.... unless the case is [determined to be a] conflict, it just goes back on someone else's calendar, and it might still need to [stay] on Judge Bedsworth['s] calendar. It might need to be that one person's calendar to special in Winston [sic]." At the end of the hearing Judge Hartsfield stated the following:
[THE COURT]: [ ] I think that the order in which it's presented to the Court is trying to say that we-you know, judges can't discuss these kinds of matters, which I thought was very preposterous. And I wonder what the-I really wonder what [ ] the Bar would say about that.
That's a very serious accusation right there. That really was very interesting. I've never heard that before, and I think that I might take that up with the Bar to see if there was any such Rule that says that judges can't have conversations with each other.
So the bottom line is that if this is continued, we have to pick a date, or you were saying let it fall where it may.
...
[FOWLER]: I am trying to tread very lightly and represent my client the best way I can without offending ... or doing anything to ... offend the Court.
[THE COURT]: Well, you don't have to worry about that. I am not easily offended that-Mr. Morrow has offended me enough to last for everybody. So I'm not going to even-
Judge Hartsfield allowed the motion to continue and stated the following:
[THE COURT]: But I would like to say that one of the reasons that I have done this is because in the child support modification motion, one of the reasons for the continuance is the fact that the modification, either way, modified up or down, goes back to the date of filing. Simply because that's the only reason that I allowed it, because I didn't see any real prejudice based on the fact that there, you know, could be a way of evening the playing field, based on the date of the modification.
On 23 October 2014, nunc pro tunc 6 October 2014, Judge Hartsfield entered an order on Plaintiff's motion to continue. In the order, Judge Hartsfield made the following findings:
18. As a result of hearing on Plaintiff's Motion to Continue and Motion for Reassignment of Judge, the Court ran out of time to hear the modification of child support and contempt motions.
19. Counsel for Plaintiff is intentionally delaying the hearing on the modification of child support and contempt motions. Plaintiff's Motions and arguments lack merit.
Judge Hartsfield concluded the trial court had subject matter jurisdiction of the case and "[n]o good cause exists to continue the modification of Defendant's child support modification or contempt motions." However, Judge Hartsfield allowed Plaintiff's motion to continue.
On 5 November 2014, nunc pro tunc 6 October 2014, Chief Judge Menefee entered an order denying Plaintiff's motion for reassignment of judge. In the order, Chief Judge Menefee noted the motion for reassignment was "filed without proper notice to opposing counsel, during the hearing in progress...."
On 5 January 2015, Defendant filed a Rule 11 motion for sanctions against Morrow and Plaintiff. Defendant alleged Morrow sent Fowler to appear at the 6 October 2014 hearing, even though "she was not prepared to represent Plaintiff on the hearings in progress, [and instead] was present to argue the ... Motion to Continue and the Motion for Reassignment of Judge." Defendant cited to the order granting the motion to continue and the order denying the motion for reassignment and alleged Plaintiff's motions were "not well grounded in fact" and "made for the purpose of harassment, unnecessary delay, increasing needless expense and for other improper purposes." As a remedy, Defendant requested the following:
1. That the Motion for Sanctions be allowed;
2. That the Defendant's attorneys' fees and the costs of this action be taxed against Plaintiff; and
3. For such other and further relief as the Court may deem just and proper.
On 16 January 2015, Plaintiff moved to dismiss Defendant's motion for sanctions, replied to the motion for sanctions, and provided Morrow's affidavit and "further response" concerning the motion for sanctions. Morrow asserted the following:
13. I received an AV rating from Martindale-Hubbell approximately 40 years ago and have retained it at all times. I became a board-certified family lawyer in 1989 and have retained said status for 25 years.
...
15. The Rule 11 Motion (aka Defendant's Motion for Sanctions) filed herein does not allege that the Motions that I filed were not "warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." Both of the Motions in question were, of course, not only filed under existing law but were filed under the statutes and case law that gives the trial judges broad discretion in making their decisions. The Motion for Reassignment of Judge falls under Canon 3C of the North Carolina Judicial Code of Conduct, which states that a "judge should disqualify himself in a proceeding in which the judge's impartiality may reasonably be questioned ."
...
23. I believe that the fact that the Motion to Continue was granted and that the Findings of Fact in the Order of Continuance contained all of the valid reasons for the granting of said Motion proves that I had not only every good reason to file the Motion but that the Rules of Professional Conduct required me to file to the Motion. A hearing was not conducted on my Motion for Reassignment of Judge. The Motion was summarily denied without hearing.
24. The Motion for Reassignment of Judge was not a pretext for filing the Motion to Continue. At the time I executed the Motions in question, I was not trying to avoid a hearing on the issue of child support modification because I contended then, and continue to contend now, that any modification of child support would be in my client's favor. I did, however, want to present the best evidence on the issue considering all of the circumstances and ensure that my client got a hearing that did not have any appearance of impropriety.
...
26. Prior to filing the Motions, I not only conducted significant research of the law but I discussed the problems as I saw them and the potential Motions that could or should be filed with not only three attorneys in my office, but also with other attorneys that primarily practice family law.
27. Because of the comments made by [Judge] Hartsfield towards me during some of the previously conducted hearings, there was a concern as to whether or not there was an appearance of impropriety arising out of the relationship between [Judge] Hartsfield and myself. I discussed the potential withdrawal of my representation with [Plaintiff] and actually drafted a motion concerning [the] same. After full and frank discussion, [Plaintiff] requested that I remain in the case and agreed that I should file the Motions that I filed in lieu of the other alternatives. At all times, [Plaintiff] who also executed the Motions, was completely guided by my advice.
Judge Hartsfield heard the parties on Defendant's Rule 11 motion, and the related motion to dismiss, on 21 January 2015. Morrow's law partner, John N. Taylor, Jr., appeared on his behalf and Plaintiff's behalf. At the hearing, defense counsel argued its motion for Rule 11 sanctions against Morrow and Plaintiff, and submitted a letter from Morrow's law firm to defense counsel's firm, which stated the following, inter alia :
Please review the enclosed [motion to dismiss, reply to the Rule 11 motion for sanctions, the further response to the Rule 11 motion for sanctions, and Morrow's affidavit] and consider carefully whether you want to continue pursuing your Rule 11 Motion. We take your motion very seriously as an unfounded attack on the ethics and reputation of our law firm and therefore want to have this matter heard and resolved as soon as possible.
Taylor submitted a case from this Court, Taylor v. Taylor Prods. Inc. , 105 N.C. App. 620, 414 S.E.2d 568 (1992), and argued against Defendant's Rule 11 motion. Taylor attempted to call Attorney Jimmy Barnhill as a fact witness because Morrow discussed the motions for reassignment and continuance with Barnhill before Morrow filed them. Defense counsel objected to Barnhill testifying, and Judge Hartsfield stated the following to Taylor:
[THE COURT]: I think ... [Taylor] want[s] to bolster the continued comment that ... [Morrow] thought about this and, you know, was being prudent and ethical and all these things and talked to people about the right way to approach this. So I think that's supposed to take the sting out of any allegations that this was done with improper purpose. That-you know, that this was well thought out. [Morrow] talked to experts. He talked to people in the field. He really pondered and did this because he wanted to do what was advocacy for his client.
I think that's why you want me to hear from [Barnhill].
[MR. TAYLOR]: That is absolutely correct[ ], Your Honor. He would be a fact witness. And you're exactly right about-
[THE COURT]: And I got that fact.
...
[TAYLOR] Thank you, Your Honor.
So, given Your Honor's comments, what is Your Honor's ruling on my request for Mr. Barnhill to testify?
[THE COURT]: I don't think it would-it's not going to aid me, as the trier of fact and law in this case at all.
[TAYLOR]: Would Your Honor allow us to have him testify as an offer of proof?
[THE COURT]: As an offer of proof that he was contacted?
[TAYLOR]: And had those discussions....
[THE COURT]: I believe it.
...
I don't think you hear me.
...
Mr. Barnhill wouldn't be here if he hadn't done it. He's not that kind of man. He's a man of deep character. So he wouldn't be in this room if he didn't do it.
Now, I don't doubt it.
[TAYLOR]: Yes, ma'am. I understand. And thank you.
And I'm just trying to protect the record.
...
But I wanted to clarify for the record that whether or not an offer of proof might be appropriate in The Court's eyes, not only as to the fact that there were discussion, but as to the nature and substance of those discussions?
[THE COURT]: No, sir. I don't think it would aid me in the least bit.
Judge Hartsfield refused to receive any testimony from Barnhill or an offer of proof from him. Thereafter, defense counsel argued Morrow should have called them about the available judges for the case, who did not recuse themselves, before filing the motion for reassignment and motion to continue. Judge Hartsfield stated the following:
[THE COURT]: So I think to even suggest that in this Motion of Reassignment of Judge was not based in fact [sic]. It was just based on some opinion that was not pleasant or that did not agree with Mr. Morrow.
There also is a long dissertation about a diatribe that went on between myself and Mr. Morrow in this Motion for Reassignment of Judge that also talks about comments that I had made about my frustration with being interrupted and with condescending remarks as to how-what I was asking, never getting a straight answer to the question. And that diatribe is in there as well. Which I don't think is necessarily-it's what-it's based in fact, because that's what I said. But how it relates to a Motion of [Rea]ssignment of Judge, to me, clearly speaks to the fact that it's not necessarily reassignment of judge that you want, it's a reassignment of me. This was truly, truly personal.
...
And I don't think that that rises to the level of saying that this was based in fact. In fact, I think that goes quite the opposite to show that this was based in some preconceived notions of prejudice or dissatisfaction with the current Judge, as were articulated in the section that Mr. Morrow chose to put in the motion.
Finally, there was much ado about my comment that there were three or less than-I don't remember what the number was. But I think three came out as being the number which made Mr. Morrow afeared and made him believe that he, you know, needed to get an outside Judge to hear this case. Because, I suppose, the wells had been tainted.
...
But, again, I cannot help but look back at the total circumstances and, you know, take the effect that these motions were filed for the purpose of undue delay. They were filed for the purpose of harassment. They were filed for the purpose of incurring needless expense on the part of the parties. And they were further a part of the degradation, the disrespect that ha[s] been exhibited throughout the three-day hearing....
So I'm going to find that Rule 11 Sanctions are appropriate in this case.
On 30 January 2015, Judge Hartsfield entered an order imposing sanctions on Plaintiff and Morrow. She made relevant findings of fact and conclusions of law as follows:
FINDINGS OF FACT
...
13. On October 6, 2014, counsel for plaintiff filed a Motion to Continue and a Motion for Reassignment of Judge. Both motions were verified by Plaintiff and signed by Attorney Marrow [sic]. Mr. Marrow [sic] did not appear on his client's behalf, instead he sent a law partner, Katie Fowler, to represent the plaintiff, who was present at the hearing. At no time did Mr. Morrow give any notice to the court or opposing counsel that he would not be attending the hearing. Attorney Fowler never explained where Attorney Morrow was and why she was making the appearance for him.
14. Attorney Fowler admitted that she was not prepared to represent the plaintiff on the motions before the court, but that her appearance was to argue motions that she had just filed before the hearing[:] A Motion to Continue and a Motion for Reassignment of Judge.
...
16. Chief Judge Menefee denied the reassignment motion in open court on October 6, 2014. On November 5, 2015 she entered a written order finding that the motion was filed without proper notice to counsel, during a hearing in progress, and that the arguments of the plaintiff were without merit.
17. Plaintiff's motion to continue was based on the allegation that the hearing was improperly scheduled and that the plaintiff was denied the ten day notice required by the rules.
18. The court granted the motion [to continue] but noted that counsel was intentionally delaying the hearing, and that the defendant would not be prejudiced because the filing date would determine the start of any [child support] modifications.
19. During the Summit School hearing and the hearing to appoint GAL and Independent Evaluator, Attorney Marrow [sic] openly expressed his displeasure by harassing and talking out of turn in the court. One morning of the hearing the court gave out candy to Attorney Marrow [sic] and the defendant and suggested that both of them sweeten their disposition for the day[']s hearing.
20. During the same hearing, Attorney Marrow [sic] stated, "well this is a poor excuse for a court[,"] when a ruling was not made in his favor. Attorney Morrow throughout the hearing was argumentative when motions were overruled by the court, and often threw papers on the judge's bench. He was cautioned on numerous occasions to "stay in his lane" by the court. Judge Hartsfield is a female judge with twelve years of judicial experience. Mr. Marrow [sic] repeatedly made comments that the judge may not be familiar with Summit School, a private school in Winston-Salem. Attorney Marrow [sic] used an arrogant and disrespectful tone throughout the hearing and during the subsequent hearing to appoint a GAL, almost to the point of bullying.
21. On the morning of the Rule 11 Motion, Attorney Taylor delivered a letter to [defense counsel] which in part said: ["]Please review the enclosed and consider carefully whether you want to continue pursuing your Rule 11 Motion". The correspondence reflected the same bullying tones that were displayed during the previous hearings.
...
CONCLUSIONS OF LAW
...
2. Attorney John Marrow [sic] has violated Rule 11 ... by filing pleadings that are not well grounded in fact, and not warranted by existing law and are imposed for an improper purpose.
...
4. The standard of review is by a preponderance of the evidence, with the attorney's conduct being examined by a standard of objective reasonableness. (The standard is one of reasonableness under the circumstances). (Advisory committee's notes)
5. The Court holds that Rule 11 has been violated in the filing of both motions on October 6, 2014, and that both motions filed within one minute of each other, were filed for the purpose of undue delay and to continue to harass the defendant, after a ruling on the Summit School issue in the defendant[']s favor.
6. Rule 11 was further violated in the Motion for Reassignment of Judge which implied that two judges observing the hearings was in violation of a rule that prohibits judges sitting in courtrooms and observing. Further the Motion implies that members of the 21st judicial bench should not discuss cases among each other, and doing so gives the appearance of impropriety. This is not grounded in fact or law, and was identified in the Motion for the sole purpose of delaying a hearing that was properly noticed for that day and time.
7. Rule 11 was also violated with the filing of the motion to continue which in part was based on the Motion for Reassignment of Counsel [sic], and concluded that "the hearings scheduled for Monday[,] October 6, 2014 at 2:00 p [.]m[.] and Wednesday[,] October 8, 2014 at 2:00 p[.]m[.] (times selected in open court by Attorney Marrow [sic] ) be continued until the hearing for the Motion for Reassignment of Judge can be heard. An associate in the firm who had never made an appearance in the case, who was admittedly totally unprepared to argue the motions scheduled for that day, is further evidence that the motions were designed to delay a[n]d harass the defendant[ ] in the case.
...
9. As a sanction, this court shall award the Grubbs defendant their reasonable attorney fees in pursuing the Motion, and that plaintiff's attorney participate in anger management, and cultural diversity classes. The actions of Attorney Morrow warrant this sanction due to his aggressive behavior toward the court, and his stances as they relate to gender and socioeconomic issues.
On 27 February 2015, Plaintiff and Morrow appealed from the 23 October 2014 order of continuance, the 5 November 2014 order denying reassignment, the 30 January 2015 order imposing sanctions, and "the additional order relating to the imposition of sanctions ... that was forecast in inter alia Decretal Paragraph 9 and 10 of the January 30, 2015 Order...."
Judge Hartsfield ordered defense counsel to prepare an affidavit of attorney's fees. Defense counsel obliged the trial court and calculated $12,575.00 in attorney's fees associated with the motion for sanctions.
On 5 March 2015, Judge Hartsfield entered a supplemental order for sanctions entitled, "Attorney's Fees and Other Rule 11 Sanctions Order." (all caps in original). Judge Hartsfield found "[t]he time spent in preparation for the Rule 11 Sanctions motion is reasonable and necessary as outlined in [defense counsel's] Affidavit of Attorney Fees." Judge Hartsfield did not make any further findings relating to Plaintiff's or Morrow's conduct that warranted the imposition of Rule 11 sanctions. Lastly, Judge Hartsfield made the following conclusions of law:
1. Sanctions have been ordered on the defendant to include reasonable attorney fees, anger management classes for Attorney John Morrow, and well as a Cultural Diversity Class to be selected by the judge.
2. The attorney fee sanctions in this matter are based upon the affidavit of [defense counsel].
3. NC Rule of Civil Procedure 11 provides for sanctions in the form of attorney fees associated with bringing a Rule 11 sanction.
4. The court having found that the time and fees associated with the Rule 11 [motion] and reasonable and necessary as provided in the February 6, 2015 affidavit of attorney's fees, and that [defense counsel] is an experienced and duly licensed [attorney] in the state of North Carolina grants the award of $12,575.00 to be paid by the plaintiff. [sic]
5. The anger management and cultural diversity classes are a further sanction in addition to the attorney's fee[s] sanction. The court in its January 30, 2015 order sets out the rationale for the additional sanctions.
6. Further the court has selected The COOL PROGRAM for both the anger management and cultural diversity training. Attorney Marrow [sic] is to bear the cost of this training and must set up the initial engagement with this agency.
Thereafter, Plaintiff and Morrow filed a second supplemental notice of appeal and appealed from the 5 March 2015 order.
II. Jurisdiction
All of the parties agree the sanctions orders are final as to Morrow, and he has an appeal of right pursuant to N.C. Gen. Stat. § 7A-27(b)(2) (2016).
On 28 June 2016, Plaintiff filed a petition for writ of certiorari with this Court. She concedes her appeal regarding the sanctions is interlocutory since her domestic case with Defendant is still ongoing. On 8 July 2016, Defendant filed a response opposing Plaintiff's petition for writ of certiorari . On 13 July 2016, Plaintiff's petition was referred to this panel.
Plaintiff contends certiorari should issue because the sanction orders, though interlocutory, affect her substantial rights under N.C. Gen. Stat. § 7A-(b)(3)(a) and are appealable through N.C. Gen. Stat. §§ 1-277(a) and 1-278. In the alternative, she requests this Court exercise its discretionary appellate jurisdiction pursuant to N.C. R. App. P. 21(a) (2016).
"To meet the pleading requirements for a petition for a writ of certiorari, a party must demonstrate: (1) no appeal is provided at law; (2) a prima facie case of error below; and (3) merit to its petition." House of Raeford Farms, Inc. v. City of Raeford , 104 N.C. App. 280, 284, 408 S.E.2d 885, 888 (1991) (internal citations omitted). Because Plaintiff has no right of appeal in this interlocutory matter; there is prima facie evidence of the trial court's error; and there is merit to Plaintiff's contentions on appeal, we grant Plaintiff's petition for writ of certiorari and have jurisdiction to hear her appeal and Morrow's regarding the trial court's order of sanctions.[5]
We do not grant Plaintiff's petition for writ of certiorari only in regards to the order denying Plaintiff's motion for reassignment of judge and order of continuance. As conceded in Plaintiff's brief, this Court lacks appellate jurisdiction to address these orders, as the orders are interlocutory. Morrow does not state grounds for appellate review regarding these orders in his brief. Plaintiff asks this Court to review the Order of Continuance and Order Denying Reassignment along with the Rule 11 Orders, because the Order of Continuance and Order Denying Reassignment "are findings of fact that provided the express basis for the Motion for Rule 11 Sanctions...." We decline Plaintiff's invitation, as we need not review the Order of Continuance and Order Denying Reassignment in order to address Plaintiff and Morrow's arguments regarding the Rule 11 sanctions. Accordingly, we deny Petitioner's petition for writ of certiorari regarding the assignments of error for the Order of Continuance and Order Denying Reassignment.
III. Standard of Review
The North Carolina Supreme Court set our standard of review in Turner v. Duke Univ. , 325 N.C. 152, 381 S.E.2d 706 (1989) :
The trial court's decision to impose or not to impose mandatory sanctions under N.C.G.S. § 1A-1, Rule 11(a) is reviewable de novo as a legal issue. In the de novo review, the appellate court will determine (1) whether the trial court's conclusions of law support its judgment or determination, (2) whether the trial court's conclusions of law are supported by its findings of fact, and (3) whether the findings of fact are supported by a sufficiency of the evidence. If the appellate court makes these three determinations in the affirmative, it must uphold the trial court's decision to impose or deny the imposition of mandatory sanctions under N.C.G.S. § 1A-1, Rule 11(a).
Id. at 165, 381 S.E.2d at 714.
"[I]n reviewing the appropriateness of the particular sanction imposed, an 'abuse of discretion' standard is proper because '[t]he rule's provision that the court "shall impose" sanctions for motions abuses ... concentrates [the court's] discretion on the selection of an appropriate sanction rather than on the decision to impose sanctions.' " Id. at 165, 381 S.E.2d at 714 (quoting Westmoreland v. CBS, Inc. , 770 F.2d 1168, 1174 (D.C. Cir. 1985) ) (alterations in original).
IV. Analysis
A judge contemplating what he/she considers to be unprofessional, ill-mannered, or contemptuous conduct can select among remedies tailored to address misconduct. A judge's inherent common law authority to control his/her courtroom provides a number of possibilities. The contempt authority under N.C. Gen. Stats. §§ 5A-11 and 5A-21, referral to a Bar Disciplinary Committee, and Rule 11 are amongst these statutory remedies. A judge's power to admonish counsel or parties can be either sua sponte or subject to a motion from a party, such as a show cause motion or Rule 11 sanctions.
In selecting the proper remedy to ameliorate alleged misconduct, judges must proceed under statutory procedures and must comply with substantive case law. Rule 11 motions are not equitable remedies, under the common law, to solve all ill manners of counsel or pleading problems. North Carolina Civil Procedure, section 11-1, suggests North Carolina courts' enthusiasm for ordering Rule 11 sanctions has not kept pace with the federal courts' field day in use of this device. Compare N.C. R. Civ. P. 11, with Fed. R. Civ. P. 11. In employing Rule 11, counsel must act cautiously to avoid the inevitable consequences of delay in proceeding on the main litigation, cost in money to the litigants, and to harmony amongst counsel and the profession. Rule 11 motions can rarely be seen as a tool to speed the resolution of an underlying dispute. We agree with the federal courts that Rule 11 motions are needed when "abuse of judicial resources" are at stake.
Rule 11 of the North Carolina Rules of Civil Procedure, "Signing and verification of pleadings," provides the following, in relevant part:
(a) Signing by Attorney.-Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record.... The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.
(b) Verification of pleadings by a party.-In any case in which verification of a pleading shall be required by these rules or by statute, it shall state in substance that the contents of the pleading verified are true to the knowledge of the person making the verification, except as to those matters stated on information and belief, and as to those matters he believes them to be true. Such verification shall be by affidavit of the party, or if there are several parties united in interest and pleading together, by at least one of such parties acquainted with the facts and capable of making the affidavit. Such affidavit may be made by the agent or attorney of a party in the cases and in the manner provided in section (c) of this rule.
N.C. Gen. Stat. § 1A-1, Rule 11. Reading the plain meaning of Rule 11, it is clear Rule 11 only applies to signed "pleadings, motions[,] and other papers." Williams v. Hinton , 127 N.C. App. 421, 424, 490 S.E.2d 239, 241 (1997) (citing Ward v. Lyall , 125 N.C. App. 732, 735, 482 S.E.2d 740, 742 (1997) ). See also N.C. Gen. Stat. § 1A-1, Rule 11(a).
The "central purpose of Rule 11 is to deter baseless filings and to streamline the administration and procedure of our courts." Adams v. Bank United of Texas FSB , 167 N.C. App. 395, 399, 606 S.E.2d 149, 153 (2004) (citation omitted). Rule 11 was enumerated to "prevent abuse of the legal system, [and] our General Assembly never intend[ed] to constrain or discourage counsel from the appropriate, well-reasoned pursuit of a just result for their client." Grover v. Norris , 137 N.C. App. 487, 495, 529 S.E.2d 231, 235 (2000).
A trial court's decision to impose sanctions must be supported by findings of fact. A court's failure to enter findings of fact and conclusions of law on this issue is error, which generally requires remand in order for the trial court to resolve any disputed factual issues. McClerin v. R-M Indus., Inc ., 118 N.C. App. 640, 644, 456 S.E.2d 352, 355 (1995) (citation omitted). However, remand is not necessary when there is no evidence in the record, considered in the light most favorable to the movant, which could support a legal conclusion that sanctions are proper. Id . at 644, 456 S.E.2d 355 (citation omitted).
Finally, as a matter of appellate law, if an appellant does not challenge the factual predicate for properly designated findings of fact, then those findings are binding on the appellate courts. Hoover v. Hoover , --- N.C. App. ----, ----, 788 S.E.2d 615, 616 (2016) (citations omitted). In these circumstances, we do not independently examine the record to create new findings of fact, but examine only whether or not the findings of fact as found support the conclusions of law and whether the sanctions are appropriate. We now examine the order entered as it relates to the appellants.
A. Sanctions Imposed upon Plaintiff
Plaintiff contends "the only finding of fact directly relating to Plaintiff that in any way relates to Rule 11 sanctions is the finding that 'both Motions were verified by the Plaintiff.' " Our reading of the order confirms Finding of Fact Number 13 is the only finding in which the Plaintiff's acts are described. In response, Defendant contends Plaintiff verified the motion without alleging she did so on information and belief. Furthermore, Defendant contends Plaintiff made no "reasonable inquiry" into bias among the District Court Judges in Forsyth County. Defendant concedes that the basis of the motion for sanctions is primarily focused on improper purpose of delay.
It is the rare client who understands the strategy and tactics of domestic litigation, as it is practiced in District Court. The Defendant asks us to impute the knowledge of the effects of these motions to Morrow's client, Plaintiff. It is more likely Morrow prepared the affidavit for his client and she signed it on advice of counsel. Certainly by the time the motion was filed, two judges had recused themselves for cause in hearing these matters. At the hearing on these motions, Judge Hartsfield acknowledged there are few judges on the District Court bench hearing domestic litigants from the area in which they live. Without a specific finding from the court which shows Plaintiff had knowledge of the effect of signing the motion would have on court proceedings and took this action to gain some temporary tactical advantage, we are unpersuaded that a signature alone would support Rule 11 sanctions against a client acting on an attorney's advice. We have also examined the record extensively and can find no evidence, that was presented at the time of the hearing which could be the basis for such a finding. We, therefore, reverse the decision of the District Court sanctioning Plaintiff as an abuse of discretion for lacking an evidentiary predicate.
B. Sanctions Imposed upon Morrow
Unlike the order awarding sanctions against Plaintiff, the findings of facts regarding Morrow's conduct on appeal are troubling. Reviewing a trial court's order is a difficult undertaking for an appellate panel, because we review the record long after the events have occurred and only by transcript. We are unable to see the conduct or put the events in the emotional context of a hotly contested trial. Finally, as members of the bar, we appreciate zealous advocacy and would not want trials to turn into a circular firing squad, where advocates attack each other for temporary advantage.
On appeal, Morrow finds particularly onerous problems with the sanctions entered against him, which require him to pay attorney's fees and attend anger management and cultural diversity classes. Among the Fifth and Fourteenth Amendment problems he identifies with the non-monetary sanctions are: (1) a denial of due process because this non-monetary sanction was not pled by the Rule 11 Movants, thus failing to give him notice that such action would be sought; (2) there was no evidence adduced at the hearing that would support these non-monetary sanctions; (3) non-monetary sanctions are not statutorily allowed by Rule 11 ; (4) the trial judge provided the evidence for non-monetary sanctions, thus improperly hearing a matter in which she was giving evidence.[6]
Similarly, Morrow has a legitimate complaint that his offer of proof was refused. This evidence could have, and should have, been admitted by affidavit or otherwise to preserve the record on appeal. Finally, there is no finding indicating the court considered lesser sanctions, a requirement in imposing sanctions under Rule 11. See Dalenko v. Collier , 191 N.C. App. 713, 723, 664 S.E.2d 425, 431 (2008). See also Dunn v. Canoy , 180 N.C. App. 30, 48-50, 636 S.E.2d 243, 255-56 (2006) ; Davis v. Wrenn , 121 N.C. App. 156, 159-60, 464 S.E.2d 708, 711 (1995), overruled in part on other grounds by Forbis v. Neal , 361 N.C. 519, 524, 649 S.E.2d 382, 386 (2007).
We vacate the trial court's order as to both the non-monetary sanctions and monetary sanctions on non-Constitutional grounds, discussed infra , we need not reach these constitutional questions. We trust on remand these specific problems mentioned in this appeal will be cured, if reheard. On remand, the court is free to take additional evidence, if it deems it is necessary. We see some record evidence that the motions were not colorably well-grounded in fact and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law. However, the continuance motion was granted and the trial court allowing a recused judge to have a private bench conference in front of the parties could be grounds for the re-assignment motion. The motions might have merit, but their timing is at issue here. The fact that counsel failed to come to Court, when he consented to do so, is a factor which must be addressed. However, this Court cannot hold conclusively the motions were not interposed for any improper purpose, such as to cause unnecessary delay. We suggest, but do not require, on remand the court focus on the question of whether the filings were made for the purpose of causing unnecessary delay for a tactical advantage.
Our reading of the transcript of the interchanges between the court and counsel cited above are very problematic. We are not in a position, as reviewers of this record, to resolve the factual conflicts between these parties, and must rely on the trial court on remand to do so. Judge Hartsfield resolved some disputes in Findings of Fact Numbers 9 through 18 of the order. These findings appear to be supported by the transcript and are not substantively challenged on appeal. These findings, however, can provide evidence to support the inference that the motions were made in part for the purpose of delaying the proceedings previously scheduled by consent. A sequence of events leading to an action can provide proof of intent. The failure of counsel to appear at the hearing on 6 October 2014 also supports this inference. The motion to continue was based upon a failure of the Defendant to provide a calendar request. However, this argument seems pre-textual because Morrow had consented to hear the matters previously. While a party may file a motion to continue at any time, it is clear, here, consent to proceed was made after the events, which based the motion to continue and to reassign the judge had already occurred. The briefs and record contain a pattern of calendar filings made before the hearings in September, indicating both parties were attempting to steer the litigation to preferred judges.
Some parts of Findings of Fact Numbers 20 and 21 are very troubling, specifically counsel's statement characterizing the proceedings as a "poor excuse for a courtroom[,]" which counsel attempted to deny or correct. This comment appears in the transcript as occurring before the motions for continuance and reassignment were filed. This is problematic because it evidences a degree of publicly expressed ill feeling toward Judge Hartsfield in court. While Rule 11 is not a substitute for other remedial measures available to a judge, witnessing this behavior supports the inference that the Plaintiff's counsel was running out the clock on the remaining issues to be heard at the October hearing, so as to obtain a different judge later in the month.
On remand, the court should use an objective standard to determine "whether a paper has been interposed for an improper purpose, with the burden on the movant to prove such improper purpose." Johns v. Johns , 195 N.C. App. 201, 212, 672 S.E.2d 34, 42 (2009) (citation omitted). An "improper purpose" is "any purpose other than one to vindicate rights ... or to put claims of right to a proper test." Persis Nova Const. Inc. v. Edwards , 195 N.C. App. 55, 63, 671 S.E.2d 23, 28 (2009) (citation omitted). The burden can be shown by a preponderance of the evidence.
We vacate the court's sanctions requiring Morrow to pay attorney fees and undergo a course of anger management and cultural diversity as a non-monetary sanction. The court's imposition of non-monetary sanctions is imperfect as a remedial measure for Rule 11 violations. The imprecision of the order creates dilemmas for the party sanctioned, which are unresolved within the order. Does the person sanctioned have to successfully complete the classes to be in compliance? What subsequent proof would the court require? How long does the person have to complete the course of education?
Furthermore, there is no clear nexus between the delay caused and the sanctions selected. How will the sanctions selected remedy the conduct? It is unclear how attendance at such classes would ameliorate delaying tactics. If Morrow's conduct was as described in the order, then there are other effective and time tested remedies available to a judge enduring improper conduct.
The North Carolina Rules of Professional Conduct and the North Carolina Superior and District Court Rules provide guidance in circumstances like these. When an attorney makes an oral statement in open court that warrants discipline, he is subject to the trial court's inherent authority to discipline attorneys and the North Carolina State Bar's disciplinary powers. In re Northwestern Bonding Co., Inc. , 16 N.C. App. 272, 275, 192 S.E.2d 33, 35 (1972) (citations omitted). See also N.C. Gen. Stat. § 84-28 ; N.C. St. B. Ethics Op. 13 DHC 11 (Aug. 8, 2014) (suspending an attorney's license for five years for disrespecting and interrupting opposing counsel during a deposition and during a jury trial). The Rules of Professional Conduct and the Rules of Superior and District Court practice prohibit much of what is complained of in the Rule 11 motions. See N.C. St. B. Rev. R. Prof'l Conduct 3.4 (Fairness to Opposing Party and Counsel), 3.5(a)(4) (stating [a] lawyer shall not ... engage in conduct intended to disrupt a tribunal...."), 4.4 (Respect for Rights of Third Persons). See also Gen. R. Pract. Super. & Dist. Cts. 12 (Courtroom Decorum). Our opinion should not be taken to conclude that Morrow should receive any of these sanctions or that we prejudge his conduct in filing these motions, but, instead, only to state there are a number of other remedial options, short of fines and classes, which would be more effective to curb intemperate remarks. These avenues for disciplinary action would cure the behavior complained of in the case sub judice , without contorting or expanding Rule 11's signatory requirements.[7]
V. Conclusion
For the foregoing reasons, we reverse the trial court's orders imposing sanctions upon Plaintiff, and we vacate and remand the trial court's order imposing sanctions upon Morrow for a new hearing in conformity with this opinion.
REVERSED IN PART, VACATED IN PART, AND REMANDED IN PART
Report per Rule 30(e).
Judges McCULLOUGH and DILLON concur.

Plaintiff alleged the parties had $67,387.37 in sale proceeds from their marital residence, which Defendant's attorney held in trust.

The parties' daughter enrolled at Summit School in 2012, when she began the sixth grade. During the sixth grade, she "experienc[ed] a difficult time in life due to her parents' separation." With the help of a counselor she "truly settled into school and [began] developing a solid self-esteem and sense of belonging." The counselor described the potential switch to public school as a "tremendous hardship[.]"

According to a supplemental narrative of the 8 September 2014 hearing, "It was the unwritten consensus among the judges of the Forsyth County District Court bench that the 'Buena Vista kids,' i.e., Judges Roemer, Graham, and Laurie L. Hutchins would not be involved in and would not hear any matters in the Grubbs v. Grubbs case." Buena Vista is an affluent neighborhood in Winston-Salem.

At an 11 August 2014 hearing, Judge Graham stated he knew Plaintiff and Defendant, "attended social functions for/with" them, and "frequently ran into Defendant while he was out walking...." The parties continued the hearing and the matter was moved off of Judge Graham's calendar.

In the event Plaintiff untimely filed her notice of appeal, as the record is not clear on this issue, our grant of Plaintiff's petition for writ of certiorari extends to the untimeliness of the notice of appeal. N.C. R. App. P. 21(a).

This last due process objection is overbroad. It is rare that a judge imposing Rule 11 sanctions would not be an observer to some of the events that led to sanctions. Our research has revealed no support of the proposition that in imposing Rule 11 sanctions another judge is required.

We also note that the parties can avail themselves of a mediation of this dispute through the Chief Justice's Commission on Professionalism.