IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA18-1046

Filed: 18 August 2020

Wake County, No. 15 CVD 16510

SRINIVAS JONNA, Plaintiff,

v.

SUDHA YARAMADA, Defendant.

Appeal by plaintiff from orders entered 31 March 2017, 20 November 2017, and 8 December 2017 by Judge Lori Christian in Wake County District Court. Appeal by defendant by writ of certiorari from order entered 20 November 2017 by Judge Lori Christian in Wake County District Court. Heard in the Court of Appeals 6 February 2020.

*Plaintiff-appellant Srinivas Jonna, pro se.*

*Blanco Tackabery & Matamoros, P.A., by Chad A. Archer, for defendant-appellee.*

*Young Moore and Henderson, P.A., by Angela Farag Craddock, court-appointed amicus curiae.*

ZACHARY, Judge.

Plaintiff-Appellant Srinivas Jonna ("Plaintiff-Father") appeals from several orders entered in the parties' domestic matter. He argues that the trial court erred by (1) incorrectly calculating his child support obligation; (2) denying his motions for a new trial; (3) sanctioning him under Rule 11 of the North Carolina Rules of Civil Procedure; and (4) granting Defendant-Mother primary physical custody of their

minor child. Defendant-Appellee Sudha Yaramada ("Defendant-Mother") petitions this Court to issue a writ of certiorari so that we may review whether the trial court correctly applied the North Carolina Child Support Guidelines (the "Guidelines").

For the reasons that follow, we vacate the 20 November 2017 child support order and remand for further proceedings. We reverse that part of the trial court's 8 December 2017 order imposing sanctions on Plaintiff-Father. The 31 March 2017 custody order and that part of the 8 December 2017 order denying Plaintiff-Father's Rule 59 motions are affirmed.

## I. Background

The parties are Indian citizens and residents of Wake County, and the parents of one child, who was born in 2013. They were married in 2009, and separated in December 2015.

On 10 December 2015, Plaintiff-Father filed an "*Ex Parte* Complaint/Motion for Temporary Custody and Injunctive Relief." In support of his request for an *ex parte* order for custody, he alleged that

> Plaintiff[-Father] and Defendant[-Mother] agreed to separate for several days after [Defendant-Mother] attempted to strike [Plaintiff-Father] . . . . That [Defendant-Mother] has over the last year of the marriage exhibited irrational behavior to include; an attempted suicide, threats to "kill" [Plaintiff-Father], [Defendant-Mother] has force[ ] fed the minor child to the point of vomiting, continues to display bouts of anger and has threatened to leave the country and return to India with

the minor child against [Plaintiff-Father's] wishes and in direct derogation of his parental rights.

Plaintiff-Father sought "an immediate Protective Order granting [him] the temporary exclusive care, custody and control of the minor child," together with an injunction prohibiting Defendant-Mother from having any contact with him or the child. That day, the trial court entered a protective order, but declined to grant Plaintiff-Father the relief he sought, instead restraining both parties from removing the child from the State of North Carolina.

On 16 December 2015, the parties executed a Memorandum of Judgment/Order, which the trial court entered. The order provided, *inter alia*, that Defendant-Mother would have primary physical custody of the minor child, Plaintiff-Father would have secondary physical custody, and the parties would share legal custody, pending a full hearing on the matter. The parties agreed to alternate actual physical custody of the minor child on a weekly basis.

On 16 February 2016, Defendant-Mother filed an answer and counterclaim seeking temporary and permanent legal and physical custody of the parties' minor child. On 1 September 2016, the trial court entered a consent order executed by the parties, allowing Plaintiff-Father to care for the minor child while Defendant-Mother traveled to India, and providing that Defendant-Mother could exercise "make up" time with the child upon her return, with the regular custodial arrangement then resuming.

On 26 January 2017, the custody case came on for hearing. Both the parties were represented by counsel and presented evidence.

Defendant-Mother testified that Plaintiff-Father's allegations in his *ex parte* complaint/motion for temporary custody and injunctive relief concerning her mental instability and other issues were baseless. She also testified that she lives in a three-bedroom apartment with a roommate and that the minor child had his own room when he stayed with her, whereas Plaintiff-Father's home was not suitable for the minor child. In addition, Defendant-Mother offered into evidence police reports of an incident of domestic violence and photographs of the injuries she sustained when Plaintiff-Father assaulted Defendant-Mother. According to Defendant-Mother, Plaintiff-Father would become aggressive at times, and "punch the walls and doors" when he lost his temper, as well as assault her.

Defendant-Mother also testified that Plaintiff-Father has a "controlling attitude." For example, in 2015, Defendant-Mother and the minor child visited India, and the child was scheduled to visit India with Plaintiff-Father immediately afterward. Because each flight from the United States to India takes 22 to 30 hours, and the minor child was an infant, Defendant-Mother tried to arrange for the minor child to stay in India for three days with his paternal grandparents until Plaintiff-Father arrived. Plaintiff-Father refused, insisting that the minor child return to the United States with Defendant-Mother, only to return to India with him 72 hours

later. Defendant-Mother explained that Plaintiff-Father "wants to have his way or no way."

The parties also disagreed on whether to have the minor child attend daycare. Defendant-Mother thought it was in the child's best interest; Plaintiff-Father wanted the child to be cared for by his parents, who live with him in his home.

Despite his allegations, Plaintiff-Father repeatedly stated at trial that the current shared custody arrangement was working well. He testified that his parents care for the minor child while he works, as well as when he plays cricket. Plaintiff-Father also testified about an ongoing legal issue in India between him and Defendant-Mother, in which he did not want the minor child involved, but said that he did not have any objection to either parent traveling with the minor child. When asked what action he wanted the trial court to take with regard to custody of the minor child, Plaintiff-Father stated, "I think the current arrangement [alternating weeks] is working very well, and we both communicate well about the child."

At the conclusion of the hearing, the trial court announced that "physical custody primarily is going to be with [Defendant-Mother]. [Plaintiff-Father] is going to have the child every other week from Thursday night to Monday night." In addition, the trial court stated that the child would continue to attend daycare.

Although Plaintiff-Father was represented by counsel, on 6 February 2017, he filed a *pro se* "Motion to Open Evidence" prior to the trial court's entry of the child

custody order. In response, on 15 February 2017, Defendant-Mother filed a "Motion for Rule 11 Sanctions." On 22 March 2017, counsel for Plaintiff-Father withdrew from the case.

By order entered 31 March 2017, the trial court concluded that it would be in the best interest of the child for the parties to share legal custody, with Defendant-Mother having primary physical custody and Plaintiff-Father having secondary physical custody. As relevant to this appeal, the order provided that: (1) "[t]he minor child shall stay in daycare until he starts school for at least a half day, each weekday"; (2) "either parent may take the minor child to India for up to five consecutive weeks each year until he is in school"; (3) after the child starts school, "either parent may take the minor child to India for up to five consecutive weeks each year during summer break . . . or up to two consecutive weeks at any time during the year"; and (4) "[i]f a parent cho[o]ses not to travel to India with the child, he or she shall have two uninterrupted weeks' vacation within the United States" with the minor child.

On 11 April 2017, Defendant-Mother filed a motion for prospective and retroactive "child support consistent with the North Carolina Child Support Guidelines."

Through new counsel,[1] Plaintiff-Father filed a Rule 59 motion, and on 22 May 2017, Plaintiff-Father filed his "Amended Motion in the Cause" pursuant to Rule 59,

---

[1] It is unclear from the record when Plaintiff-Father retained another attorney in the matter.

seeking a new trial on the grounds of irregularity at trial, fraud, surprise, and newly discovered evidence. On 9 June 2017, Defendant-Mother responded to Plaintiff-Father's amended Rule 59 motion with her motion for Rule 11 sanctions and a motion to dismiss.

A hearing was held on 13 June 2017, at which the trial court addressed Plaintiff-Father's amended Rule 59 motion for a new trial and Defendant-Mother's motion for sanctions. After hearing the arguments of counsel, the trial court stated, "I don't find any grounds under Rule 59; quite frankly, I find that this is frivolous, and I am going to find that pursuant to Rule 11, [Plaintiff-Father] is going to pay the attorney's fees for [Defendant-Mother]."

On 25 July 2017, the trial court held the child support hearing. Plaintiff-Father proceeded *pro se*, and Defendant-Mother was represented by counsel. On 20 November 2017, the trial court entered its child support order, requiring, *inter alia*, that Plaintiff-Father (1) contribute $680.39 per month to the support of the parties' minor child beginning 1 August 2015; (2) pay arrearages of $5,539.18 to Defendant-Mother at the rate of $230.80 per month; and (3) pay 45% of the minor child's uninsured health care expenses. The trial court also ordered that the parties exchange copies of their W-2s and other evidence of their income annually.

By order entered 8 December 2017, the trial court denied Plaintiff-Father's motion for a new trial and imposed sanctions on him. The trial court found that

Plaintiff-Father "ha[d] not forecast[ ] evidence that would change" its prior custody ruling, and that "[t]here [wa]s no basis for the Rule 59 motion filed by Plaintiff[-Father]."

On 15 December 2017, Plaintiff-Father filed notice of appeal to this Court. On appeal, Plaintiff-Father challenges certain aspects of the child support order, the order denying his motion for a new trial and imposing sanctions, and the child custody order. On 25 November 2019, Defendant-Mother petitioned this Court to issue a writ of certiorari, in order to review the child support order. We address each issue in turn.

## II. Child Support Order

### A. Standard of Review

"Child support orders entered by a trial court are accorded substantial deference by appellate courts and our review is limited to a determination of whether there was a clear abuse of discretion." *Mason v. Erwin*, 157 N.C. App. 284, 287, 579 S.E.2d 120, 122 (2003) (citation omitted). "Under this standard of review, the trial court's ruling will be upset only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision." *Biggs v. Greer*, 136 N.C. App. 294, 296-97, 524 S.E.2d 577, 581 (2000) (citation omitted). "Where a party asserts an error of law occurred, we apply a de novo standard of review." *State ex rel. Lively v. Berry*, 187 N.C. App. 459, 462, 653 S.E.2d 192, 194 (2007) (italics omitted).

### B. Child Support Obligation

Plaintiff-Father first argues that the trial court erred in calculating his retroactive child support obligation, and in ordering the parties to exchange financial information annually.

### 1. Use of the Guidelines

Plaintiff-Father contends that the "[t]rial court erred as a matter of law by using the Child Support Guidelines Worksheet to calculate the Retroactive Child support from December 2015 to April 11, 2017." We disagree.

Child support awarded for that period of time prior to the date on which a party files a complaint or motion for child support "is properly classified as retroactive child support." *Respess v. Respess*, 232 N.C. App. 611, 628, 754 S.E.2d 691, 702 (2014) (citation omitted). Effective 1 January 2015, the Guidelines specifically authorize trial courts to use the Guidelines for calculating a retroactive child support obligation:

> In a direct response to *Respess v. Respess*, 232 N.C. App. 611, 754 S.E.2d 691 (2014), the 2014 General Assembly amended G.S. 50-13.4(c1) to provide that the Conference of Chief District Judges shall prescribe uniform statewide presumptive guidelines for the computation of child support obligations, *including retroactive support obligations*[.]
>
> In cases involving a parent's obligation to support his or her child for a period before a child support action was filed (i.e., cases involving claims for "retroactive child support" or "prior maintenance"), a court may determine the amount of the parent's obligation (a) by determining the amount of support that would have been required had the guidelines been applied at the beginning of the time period for which

support is being sought, or (b) based on the parent's fair share of actual expenditures for the child's care.

*Guidelines*, Ann. R. 2 (emphasis added) (revised 1 January 2015 and left unchanged as of 2019); *see also* N.C. Gen. Stat. § 50-13.4(c1) ("Effective July 1, 1990, the Conference of Chief District Judges shall prescribe uniform statewide presumptive guidelines for the computation of child support obligations, *including retroactive support obligations*, of each parent as provided in Chapter 50 or elsewhere in the General Statutes . . . ." (emphasis added)).

Thus, Plaintiff-Father's assertion that the trial court erred by utilizing the Guidelines to calculate his retroactive child support obligation is meritless.

*2. Finding of Fact 9: Health Insurance Expense*

Plaintiff-Father also specifically challenges finding of fact 9, which provides, in pertinent part: "For the period December[ ] 2015 to January 2017 . . . [Plaintiff-Father] incurred an average of $156 per month for [health insurance coverage] expense[ ] for the minor child." Plaintiff-Father argues that "[t]here is no competent evidence to support [the] [t]rial court's finding," and that "there is uncontroverted evidence" in the record that he paid $220 per month in 2015, and $231 per month in 2016, and $156 per month in 2017 to maintain health insurance coverage for the minor child. We agree.

At the child support hearing, Plaintiff-Father testified as follows:

THE COURT: How much are you paying for your child's day -- healthcare?

[Plaintiff-Father]: In the last three years, it's been fluctuating, Your Honor, so I request that average be considered. So in 2015, I was paying $231; in 2016, I was paying $220; and this year I've been paying $156.

THE COURT: It's going down?

[Plaintiff-Father]: It's strange, it actually went down this -- and that's why I said it's fluctuating; it may go up next year, I don't know.

THE COURT: It's 156 a month --

[Plaintiff-Father]: $156 --

THE COURT: -- or per pay period?

. . . .

[Plaintiff-Father]: I think it's per month. And that's why I'm pretty sure it will go up next year.

In addition, Plaintiff-Father presented the trial court with written verification of the 2015 and 2016 cost of maintaining health insurance coverage for the minor child. Thus, the trial court's finding in this regard was not supported by competent evidence.

Accordingly, we remand the child support order to the trial court for appropriate findings of fact and a recalculation of Plaintiff-Father's retroactive child support obligation, in which he is given proper credit for the expense of providing health insurance coverage for the minor child.

### 3. *Work-Related Child Care Costs*

Plaintiff-Father next maintains that it was not "reasonably necessary" for Defendant-Mother to send the child to daycare during the period prior to February 2017, and that the trial court erred by including this expense in the calculation of his retroactive child support obligation. We disagree.

The Guidelines provide that "[r]easonable child care costs that are . . . paid by a parent due to employment . . . are added to the basic child support obligation and prorated between the parents based on their respective incomes." *Guidelines*, Ann. R. 4. Moreover, "[w]hen the court does not deviate from the Guidelines, an order for child support in an amount determined pursuant to the Guidelines is conclusively presumed to meet the reasonable needs of a child . . . and specific findings regarding a child's reasonable needs . . . are therefore not required." *Guidelines*, Ann. R. 1.

Here, the minor child's attendance at daycare was a point of contention at trial. Defendant-Mother asserted that the child benefited from attendance, while Plaintiff-Father claimed that the expense was unnecessary when his parents were willing and able to care for the child free of charge. However, it was undisputed that both parents were employed and that Defendant-Mother incurred the child care cost due to her employment, and Plaintiff-Father did not request that the trial court deviate from the Guidelines.

The trial court found in its child support order that since the date of separation, both parents have been employed, and that "[f]or the period December[ ] 2015 to January 2017 . . . the parties shared equal custodial time. Furthermore, during this period . . . Defendant[-Mother] incurred an average of $700 per month for work-related day care expenses for the minor child[.]" Father has not raised any challenge to these findings of fact on appeal.

Having found that Defendant-Mother incurred child care costs due to her employment, the trial court properly included this work-related child care expense in the calculation of Plaintiff-Father's child support obligation. As explicitly provided in the Guidelines, when the child support obligation is calculated in accordance with the Guidelines, "specific findings regarding a child's reasonable needs . . . are . . . not required." *Guidelines*, Ann. R. 1. Thus, in light of the trial court's other findings, it was not required to make a specific finding of fact that the work-related child care expense was necessary.

Accordingly, the trial court did not abuse its discretion by including Defendant-Mother's work-related child care expense in its retroactive child support calculation. This argument is overruled.

C.   *Exchange of W-2 Forms*

Lastly, Plaintiff-Father maintains that the trial court "exceeded its authority in ordering the [p]arties to exchange their W[-]2s every year." This argument is without merit.

First, Plaintiff-Father fails to furnish this Court with a legitimate argument as to why this portion of the order exceeded the trial court's authority. Nor does he set forth any argument as to why this constitutes an abuse of the trial court's discretion. It was Plaintiff-Father's duty "to challenge findings and conclusions, and make corresponding arguments on appeal. It is not the job of this Court to create an appeal for Plaintiff-[Father], [or] to supplement an appellant's brief with legal authority or arguments not contained therein." *Lasecki v. Lasecki*, 257 N.C. App. 24, 47, 809 S.E.2d 296, 312 (2017) (citations and internal quotation marks omitted). Thus, this argument is abandoned.

In addition, ordering the parties to a child support action to exchange financial information annually is well within the inherent authority of the court to administer justice. The Guidelines "are based on the 'income shares' model[.]" *Guidelines*, Ann. R. 2. "The income shares model is based on the concept that child support is a shared parental obligation and that a child should receive the same proportion of parental income he or she would have received if the child's parents lived together." *Guidelines*, Ann. R. 2. Because it is necessary to have the parties' financial information in order to determine the parental support obligation, it is not uncommon for North Carolina

courts to order that parties periodically exchange financial information. Plaintiff-Father's argument lacks merit.

### D.      *Summary*

The trial court erred in calculating Plaintiff-Father's retroactive child support obligation. Accordingly, we vacate the 20 November 2017 child support order, and remand to the trial court for additional findings of fact regarding the cost of health insurance coverage for the minor child, and a recalculation of Plaintiff-Father's retroactive child support obligation.

### III.  Rule 59(a) Motion

In the present case, Plaintiff-Father moved the trial court for a new trial pursuant to Rule 59(a)(1), (2), (3), and (4). On appeal, he argues that the trial court erred in denying his motion for a new trial under Rule 59(a)(1), (3), and (4), asserting that (1) there was an "irregularity" at trial because "[i]nadmissible and prejudicial hearsay evidence" was used by the trial court in reaching its conclusions of law; (2) he "and his attorney were 'surprised' and 'shocked' to hear [Defendant-Mother] completely contradicting her statement in the Consent Order . . . and asking for sole custody and making various false allegations" at trial; and (3) he is now in possession of evidence to which he did not have access prior to trial. After careful review, we conclude that the trial court's denial of Plaintiff-Father's Rule 59(a) motion does not

"amount[ ] to a substantial miscarriage of justice." *Worthington v. Bynum*, 305 N.C. 478, 487, 290 S.E.2d 599, 605 (1982).

### A. *Standard of Review*

A party may move the trial court for a new trial, or to alter or amend a judgment, under one or more of the nine grounds found in Rule 59(a). N.C. Gen. Stat. § 1A-1, Rule 59(a). For motions brought under Rule 59(a)(1)-(6) and (9), "a motion for new trial is addressed to the sound discretion of the trial court, and its ruling will not be disturbed absent a manifest abuse of that discretion." *N.C. Indus. Capital, LLC v. Clayton*, 185 N.C. App. 356, 371, 649 S.E.2d 14, 25 (2007) (citation omitted). A trial court's discretion regarding a motion under Rule 59 is "practically unlimited." *Pearce v. Fletcher*, 74 N.C. App. 543, 544, 328 S.E.2d 889, 890 (1985) (citation omitted). "Consequently, an appellate court should not disturb a discretionary Rule 59 order unless it is reasonably convinced by the cold record that the trial judge's ruling probably amounted to a substantial miscarriage of justice." *Worthington*, 305 N.C. at 487, 290 S.E.2d at 605.

### B. *Irregularity at Trial*

Plaintiff-Father argues that the admission into evidence of what he describes as inadmissible and prejudicial hearsay amounted to an irregularity depriving him of a fair trial.

Rule 59(a)(1) states that a new trial may be granted for "[a]ny irregularity by which any party was prevented from having a fair trial[.]" N.C. Gen. Stat. § 1A-1, Rule 59(a)(1). Although the language of Rule 59(a)(1) is broad, "[n]ew trials are not awarded because of technical errors. The error must be prejudicial." *Sisk v. Sisk*, 221 N.C. App. 631, 635, 729 S.E.2d 68, 71 (2012) (citation omitted), *disc. review denied*, 366 N.C. 571, 738 S.E.2d 368 (2013). Moreover, "[t]he party asserting the error must demonstrate that he has been prejudiced thereby." *Id.* (citation omitted).

Here, Plaintiff-Father fails to demonstrate an error by which he was prejudiced. Plaintiff-Father argues on appeal that he "was prejudiced from having a fair trial by admitting these hearsay [police] reports into evidence, which misled the [t]rial [c]ourt[.]" However, Plaintiff-Father also maintains that the "[p]olice reports were produced to corroborate the purported domestic violence." His contention makes the point that because Defendant-Mother testified without objection to the domestic violence, as well as the injuries she suffered, the admission of the police reports cannot have prejudiced his case to the point where he could not have a fair trial. Assuming, *arguendo*, that the police reports were improperly admitted, Defendant-Mother's testimony was itself ample substantive evidence of the acts, and thus, would not constitute an irregularity warranting a new trial.

In addition, Plaintiff-Father makes no argument that he was prejudiced by the admission of the photographs. "It is not the duty of this Court to peruse . . . the record,

constructing an argument for appellant." *Id.* at 635, 729 S.E.2d at 72 (citation omitted).

This argument therefore lacks merit.

C.     *Accident or Surprise*

Plaintiff-Father also claims that he is entitled to a new trial on the basis of Rule 59(a)(3), which provides that a new trial may be granted for "[a]ccident or surprise which ordinary prudence could not have guarded against[.]" N.C. Gen. Stat. § 1A-1, Rule 59(a)(3). He asserts that he was not prepared for the evidence introduced by Defendant-Mother at trial in support of her efforts to gain primary physical custody, as he was under the impression that the parties agreed to share joint legal and physical custody of the parties' child. He argues that he and "his attorney were 'surprised' and 'shocked' to hear . . . Defendant[-Mother] completely contradicting her statement in the Consent Order . . . and asking for sole custody and making various false allegations."

We note, however, that in her answer and counterclaim for child custody, Defendant-Mother specifically alleged that it was "in the best interest of said minor child that his care, custody and control be placed" with her, and she sought the "primary physical and legal care, custody and control of the said minor child." She also testified at trial that she wanted primary legal and physical custody of the parties' child because she "ha[d] been the primary caregiver of the child ever since he

was born." Defendant-Mother's agreement to share custody on a temporary basis, pending a full hearing on custody, did not constitute a waiver of her express claim for primary custody.

That Defendant-Mother sought primary legal and physical custody of the parties' minor child at the custody trial was not "surprise which ordinary prudence could not have guarded against[.]" *Id.* Plaintiff-Father is not entitled to relief on the basis of this argument.

### D. *Newly Discovered Evidence*

Finally, Plaintiff-Father argues that a new trial is warranted under Rule 59(a)(4), because he has "[e]vidence that could not be procured prior to trial."

Rule 59(a)(4) provides that a new trial may be granted on the grounds of "[n]ewly discovered evidence material for the party making the motion which he could not, with reasonable diligence, have discovered and produced at the trial[.]" *Id*. § 1A-1, Rule 59(a)(4). Plaintiff-Father concedes that the evidence to which he refers was not newly discovered after trial, but asserts that it was inaccessible prior to trial. He maintains that it therefore "satisfie[s] the requirements of Rule 59(a)(4) for [n]ew trial."

The first item addressed by Plaintiff-Father is a recording that was stored on his computer hard drive, which he alleges would tend to show that Defendant-Mother threatened him and the child, and that she was abusive. Plaintiff-Father does not

dispute Defendant-Mother's contention that he knew that the information was on his computer, and simply waited until after trial to hire an expert to access that information. Hence, the recording was not newly discovered evidence, nor was it inaccessible.

The second item of evidence at issue was daycare "drop off" records, which Plaintiff-Father alleges on appeal would tend to show that he dropped the child off at daycare 74% of the time.[2] Plaintiff-Father asserts that he requested the daycare records, but that Defendant-Mother would not allow the daycare to release the information to him until after trial.

Although Defendant-Mother may have told the daycare not to respond to Plaintiff-Father's requests for information, he does not address the fact that the information he sought from the child's daycare could have been obtained by subpoena prior to trial. The daycare records were not newly discovered and were not inaccessible, and Plaintiff-Father's failure to subpoena the daycare records evidences a lack of due diligence.

It is undisputed that the evidence was not newly discovered; it is also evident that it was not inaccessible prior to trial. *See Ar-Con Constr. Co. v. Anderson*, 5 N.C. App. 12, 20, 168 S.E.2d 18, 23 (1969) ("There was no showing that appellant did not have full knowledge of the facts referred to in its motion at the time of the hearing on

---

[2] He alleged in his amended Rule 59 motion that the daycare records would show that Defendant-Mother did not have the child in daycare full-time starting in mid-December 2016.

the plea in bar, and no showing as to why, in the exercise of due diligence, appellant had failed to present evidence concerning such facts at the time of that hearing."). Plaintiff-Father has failed to demonstrate the existence of newly discovered material evidence that he could not have discovered and produced at the custody hearing.

Thus, the trial court properly denied a new trial on this ground as well.

## E. *Summary*

Plaintiff-Father failed to establish that the trial court abused its discretion in denying his Rule 59(a) motion. Accordingly, we affirm that part of the trial court's 8 December 2017 order denying Plaintiff-Father's Rule 59(a) motion.

## IV. *Rule 11 Sanctions*

Plaintiff-Father next contends that the trial court erred in imposing Rule 11 sanctions against him for filing three post-hearing motions that he maintains were a proper attempt to obtain appropriate post-trial relief from the custody order pursuant to Rule 59. After careful consideration, we conclude that the trial court erred in sanctioning Plaintiff-Father for filing these motions.

## A. *Standard of Review*

Our standard of review for Rule 11 sanctions is well established: "The trial court's decision to impose or not to impose mandatory sanctions under . . . Rule 11(a) is reviewable de novo as a legal issue." *Turner v. Duke Univ.*, 325 N.C. 152, 165, 381 S.E.2d 706, 714 (1989) (italics omitted). "[A]n appellate court must determine

whether the findings of fact of the trial court are supported by sufficient evidence, whether the conclusions of law are supported by the findings of fact, and whether the conclusions of law support the judgment." *Johns v. Johns*, 195 N.C. App. 201, 206, 672 S.E.2d 34, 38 (2009) (citation omitted). "If the appellate court makes these three determinations in the affirmative, it must uphold the trial court's decision to impose or deny the imposition of mandatory sanctions under . . . Rule 11(a)." *Turner*, 325 N.C. at 165, 381 S.E.2d at 714.

> In reviewing a trial judge's findings of fact, we are "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Williams*, 362 N.C. 628, 632, 669 S.E.2d 290, 294 (2008) (quoting *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982)); *see also Sisk v. Transylvania Cmty. Hosp., Inc.*, 364 N.C. 172, 179, 695 S.E.2d 429, 434 (2010) (" '[F]indings of fact made by the trial judge are conclusive on appeal if supported by competent evidence, even if . . . there is evidence to the contrary.' " (quoting *Tillman v. Commercial Credit Loans, Inc.*, 362 N.C. 93, 100-01, 655 S.E.2d 362, 369 (2008))).

*Auto. Grp., LLC v. A-1 Auto Charlotte, LLC*, 230 N.C. App. 443, 447, 750 S.E.2d 562, 566 (2013).

B.    *Analysis*

Rule 11 of the North Carolina Rules of Civil Procedure provides, in pertinent part:

> Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one

attorney of record . . . . A party who is not represented by an attorney shall sign his pleading, motion, or other paper . . . . The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. . . . If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction[.]

N.C. Gen. Stat. § 1A-1, Rule 11(a).

Appellate review "of sanctions under Rule 11 consists of a three-pronged analysis: (1) factual sufficiency, (2) legal sufficiency, and (3) improper purpose." *Auto. Grp.*, 230 N.C. App. at 447, 750 S.E.2d at 566 (citation and internal quotation marks omitted). "A violation of any one of these prongs requires the imposition of sanctions." *Id.* For each prong, the trial court must make findings of fact and conclusions of law. *McClerin v. R-M Indus., Inc.*, 118 N.C. App. 640, 644, 456 S.E.2d 352, 355 (1995).

To assess the sufficiency of the factual basis of a pleading, this Court must determine "(1) whether the plaintiff undertook a reasonable inquiry into the facts and (2) whether the plaintiff, after reviewing the results of his inquiry, reasonably believed that his position was well grounded in fact." *In re Thompson*, 232 N.C. App. 224, 230, 754 S.E.2d 168, 173 (2014) (citation omitted). An appraisal of the legal

sufficiency of a pleading requires that we look "first to the facial plausibility of the pleading and only then, if the pleading is implausible under existing law, to the issue of whether to the best of the signer's knowledge, information, and belief formed after reasonable inquiry, the complaint was warranted by the existing law." *Bryson v. Sullivan*, 330 N.C. 644, 661, 412 S.E.2d 327, 336 (1992) (citation and internal quotation marks omitted). Lastly, to evaluate the improper purpose prong, we must review the evidence to ascertain whether the pleading was filed for "any purpose other than one to vindicate rights . . . or to put claims of right to a proper test." *Mack v. Moore*, 107 N.C. App. 87, 93, 418 S.E.2d 685, 689 (1992) (citation and internal quotation marks omitted).

It must be noted, however, that "just because a plaintiff is eventually unsuccessful in [his] claim, does not mean the claim was inappropriate or unreasonable." *Grover v. Norris*, 137 N.C. App. 487, 495, 529 S.E.2d 231, 235 (2000).

In the instant case, after the trial court announced its decision to grant Defendant-Mother primary physical custody of the parties' child, Plaintiff-Father filed a *pro se* motion to "open evidence." Defendant-Mother responded with a motion for sanctions. The trial court allowed Plaintiff-Father's trial attorney to withdraw, and Plaintiff-Father hired second counsel who promptly filed a Rule 59 motion, and soon thereafter, an amended Rule 59 motion, on essentially the same grounds as alleged by Plaintiff-Father in his *pro se* motion. Plaintiff-Father then took a dismissal

of his *pro se* motion. Defendant-Mother responded to the amended Rule 59 motion by filing a second motion for sanctions, asserting that Plaintiff-Father was improperly seeking to introduce evidence that he never provided in discovery or during trial, and that his motions were not well grounded in fact, were not filed in good faith, and were interposed for an improper purpose. Defendant-Mother alleged that Plaintiff-Father was "merely upset with the [trial c]ourt's decision."

The trial court agreed with Defendant-Mother, finding that Plaintiff-Father's three motions were "not supported by the facts or the law," and "were filed in bad faith." Concluding that "[t]his is a frivolous action under the meaning of Rule 11 of the North Carolina Rules of Civil Procedure," the trial court assessed Plaintiff-Father $3,131.00 in attorney's fees, payable to Defendant-Mother.

On appeal, Plaintiff-Father maintains that he acted in good faith with regard to all three motions, and through counsel with regard to the Rule 59 and amended Rule 59 motions. Plaintiff-Father asserts that he was properly attempting to obtain relief from the trial court's custody order in each motion by (1) convincing the trial court that it erred in the admission of evidence over his objection, to his prejudice, (2) exposing Defendant-Mother's misrepresentations to the trial court, and (3) bringing newly discovered evidence to the trial court's attention.

1. *Sufficiency of the Factual and Legal Bases*

The evidence does not support the trial court's assessment of sanctions against Plaintiff-Father on the ground that his post-trial motions had no basis in fact or law.

Plaintiff-Father first filed his *pro se* motion to open evidence, which Defendant-Mother's counsel describes as essentially asserting the same facts as in the Rule 59 and amended Rule 59 motions filed by his second attorney. There is no dispute that Plaintiff-Father sought the same relief in his *pro se* motion as in the Rule 59 motions. At the Rule 59 hearing, Plaintiff-Father's second attorney told the trial court that Plaintiff-Father came to her and asked that she help him. She then "spoke to him . . . at length," went "through all the evidence," and took "a bit of time on this and . . . looked at the order." Presumably, Plaintiff-Father's second attorney considered those facts, determined that the facts were sufficient to warrant a legally sound motion under Rule 59, and then drafted, signed, and filed the Rule 59 and amended Rule 59 motions. Thereafter, Plaintiff-Father dismissed his *pro se* motion. There are no allegations that Plaintiff-Father misled his attorney regarding the facts or circumstances of his case.

In light of the substantial similarity of Plaintiff-Father's dismissed *pro se* motion, the Rule 59 motion, and the amended Rule 59 motion, we will focus our analysis on the Rule 59 motions.

It is well established that "a represented party may rely on his attorney's advice as to the legal sufficiency of his claims[.]" *Bryson*, 330 N.C. at 663, 412 S.E.2d

at 337. Where Plaintiff-Father did not misrepresent the facts to his counsel, it was not unreasonable for Plaintiff-Father to believe, on the basis of his attorney's superior knowledge and skill, together with her willingness to undertake the pursuit of the Rule 59 motion on his behalf, that his motions were well grounded in fact and in law.

This Court addressed a similar issue in *Grubbs v. Grubbs*, 252 N.C. App. 265, 796 S.E.2d 822, 2017 WL 892564 (2017) (unpublished). In *Grubbs*, the defendant sought Rule 11 sanctions for allegedly improper motions interposed in a domestic matter. *Grubbs*, 2017 WL 892564, at *7. The trial court concluded that the verified motions were "not well grounded in fact, and not warranted by existing law and [were interposed] for an improper purpose," and imposed Rule 11 sanctions against the plaintiff as well as her attorney. *Id.* at *11. We determined that, absent an improper motive, Rule 11 sanctions should not be assessed against a client who relies in good faith on the advice of counsel:

> It is the rare client who understands the strategy and tactics of domestic litigation, as it is practiced in District Court. The [d]efendant asks us to impute the knowledge of the effects of these motions to [the attorney's] client, [the p]laintiff. It is more likely [the attorney] prepared the affidavit for his client and she signed it on advice of counsel. . . . . Without a specific finding from the court which shows [the p]laintiff had knowledge of the effect of signing the motion would have on court proceedings and took this action to gain some temporary tactical advantage, we are unpersuaded that a signature alone would support Rule 11 sanctions against a client acting on an attorney's advice.

*Id.* at *15.

*Grubbs* is an unpublished opinion and is not, therefore, binding legal authority. *See* N.C.R. App. P. 30(e)(3). Nevertheless, we find its reasoning persuasive, and we hereby adopt it.

In that Plaintiff-Father acted on the advice of counsel, and there is no evidence that he misled counsel as to the relevant facts or posture of the case, the assessment of sanctions against him on the grounds that his motions were not well grounded in fact or were not warranted by existing law is not merited. Therefore, in the present case, the trial court's findings do not support the imposition of Rule 11 sanctions on these bases against Plaintiff-Father.

### 2. *Improper Purpose*

Nonetheless, a violation of any one of the three prongs under a Rule 11 analysis will support the imposition of sanctions. *Williams*, 127 N.C. App. at 423, 490 S.E.2d at 240-41. Thus, we now review the improper purpose prong of the Rule 11 analysis.

An improper purpose is "any purpose other than one to vindicate rights or to put claims of right to a proper test." *Persis Nova Constr. Inc. v. Edwards*, 195 N.C. App. 55, 63, 671 S.E.2d 23, 28 (2009) (citation omitted). Our Supreme Court has determined that "[p]arties, as well as attorneys, may be subject to sanctions for violations of the improper purpose prong of Rule 11." *Bryson*, 330 N.C. at 656, 412 S.E.2d at 333. "[A] represented party . . . will be held responsible if his evident

purpose is to harass, persecute, otherwise vex his opponents, or cause them unnecessary cost or delay." *Id.* at 663, 412 S.E.2d at 337.

The existence of an improper purpose is determined from the totality of the circumstances. *See Mack*, 107 N.C. App. at 93-94, 418 S.E.2d at 689. "[T]he relevant inquiry is whether the existence of an improper purpose may be inferred from the alleged offender's objective behavior." *Id.* at 93, 685 S.E.2d at 689. The burden is on the movant to prove, by a preponderance of the evidence, that the pleading has been interposed for an improper purpose. *Auto. Grp.*, 230 N.C. App. at 447-48, 750 S.E.2d at 566-67.

In the present case, Defendant-Mother asserted that Plaintiff-Father filed the *pro se* motion, and later the Rule 59 and amended Rule 59 motions, because he was "merely upset with the [trial c]ourt's decision[.]" This is usually the case in the wake of a custody trial and, standing alone, does not constitute an improper purpose. Indeed, it is likely that at least one party in any custody trial, if not both, will be unhappy with the trial court's decision. It is not uncommon for counsel to then file a Rule 59 motion seeking to present additional evidence. *See, e.g., Faulkenberry v. Faulkenberry*, 169 N.C. App. 428, 431-32, 610 S.E.2d 237, 239-40 (2005); *Senner v. Senner*, 161 N.C. App. 78, 84-85, 587 S.E.2d 675, 679 (2003). Here, Defendant-Mother offered no evidence to the trial court that Plaintiff-Father interposed his motions "to gain some temporary tactical advantage," to cause unnecessary expense or delay, or

to advance some other improper motive. *Grubbs*, 2017 WL 892564 at \*15. As the parties seem to agree, Plaintiff-Father's purpose was to get more evidence before the trial court and obtain equally shared physical custody of the parties' minor child, rather than to personally or financially injure Defendant-Mother or to delay the proceedings.

Defendant-Mother had the burden of proving that the motions were filed for an improper purpose in violation of Rule 11, which she failed to satisfy. Therefore, the evidence does not support the finding of fact that Plaintiff-Father filed the motions in bad faith.

Accordingly, that part of the trial court's 8 December 2017 order imposing sanctions is reversed.

## V. Child Custody Order

Plaintiff-Father next argues that "[t]he trial court erred as a matter of law in awarding primary custody of the child to . . . Defendant[-Mother]," and challenges several of the trial court's findings of fact. Specifically, he asserts that findings of fact 9, 10, 15, 17, 18, 19, 20, 21, 24, and 27 are not supported by competent evidence.

### A. *Appellate Jurisdiction*

As a threshold matter, we must determine whether this Court has jurisdiction to review the child custody order. Although the child custody order was entered on 31 March 2017, Plaintiff-Father filed notice of appeal to this Court on 15 December

2017—well beyond the ordinary period within which an appeal may be timely filed. *See* N.C.R. App. P. 3(c)(1). However, for the following reasons, the appeal is properly before this Court.

"Any party entitled by law to appeal from a judgment or order of a superior or district court rendered in a civil action . . . may take appeal by filing notice of appeal with the clerk of superior court[.]" N.C.R. App. P. 3(a). The notice of appeal must be filed "within thirty days after entry of judgment." N.C.R. App. P. 3(c)(1). "Failure to give timely notice of appeal . . . is jurisdictional, and an untimely attempt to appeal must be dismissed." *Booth v. Utica Mutual Ins.*, 308 N.C. 187, 189, 301 S.E.2d 98, 99-100 (1983) (per curiam).

Nevertheless, where a party files a timely Rule 59 motion requesting a new trial, "the thirty-day period for taking appeal is tolled as to all parties until entry of an order disposing of the motion and then runs as to each party from the date of entry of the order[.]" N.C.R. App. P. 3(c)(3).  A motion for a new trial pursuant to Rule 59 "shall be served not later than 10 days after entry of the judgment." N.C. Gen. Stat. § 1A-1, Rule 59(b).

Entry and service of judgments are governed by Rule 58. "[A] judgment is entered when it is reduced to writing, signed by the judge, and filed with the clerk of court[.]" *Id*. § 1A-1, Rule 58. After entry, a copy of the judgment shall be served "upon all other parties within three days." *Id*. § 1A-1, Rule 58. The trial judge may designate

one of the parties to "serve a copy of the judgment upon all other parties within three days after the judgment is entered." *Id.* Moreover, "[a]ll time periods within which a party may further act pursuant to . . . Rule 59 *shall be tolled for the duration of any period of noncompliance with this service requirement*," provided, however, that "no time period under . . . Rule 59 shall be tolled longer than 90 days from the date the judgment is entered." *Id.* (emphasis added). Service and proof of service must comply with Rule 5 of the North Carolina Rules of Civil Procedure. *Id.*

In the present case, the trial court tasked Defendant-Mother's attorney with drafting the order at the conclusion of the custody hearing. Between the date of the hearing and the date on which the order was entered, the trial court permitted Plaintiff-Father's attorney to withdraw from the case. Thus, Defendant-Mother should have served the custody order on Plaintiff-Father, as he was not represented by counsel when the order was entered. *See* N.C. Gen. Stat. § 1A-1, Rule 5(b) (providing that "all pleadings subsequent to the original complaint and other papers required or permitted to be served[ ]" shall be served on the party "[i]f the party has no attorney of record"). However, on 31 March 2017, Defendant-Mother's counsel served a copy of the order on Plaintiff-Father's former counsel. Plaintiff-Father received notice of the judgment on 10 April 2017, by first class mail from his former counsel.

Defendant-Mother failed to abide by the service requirements of Rule 58 by serving the custody order on Plaintiff-Father's former attorney rather than on Plaintiff-Father. Because "[a]ll time periods within which a party may further act pursuant to . . . Rule 59 shall be tolled for the duration of any period of noncompliance with this service requirement," the deadline for Plaintiff-Father to serve his motion for a new trial on Defendant-Mother's counsel was tolled until ten days after Plaintiff-Father's receipt of the custody order on 10 April 2017, rather than ten days after entry of the custody order. *D.G. II, LLC v. Nix*, 213 N.C. App. 220, 225, 713 S.E.2d 140, 145 (2011) (citation omitted) (concluding that, after defendants' failure to serve the plaintiff with the judgment, the ten-day period within which the plaintiff could serve its motion for new trial was not triggered until ten days after the plaintiff's receipt of the judgment from the county courthouse, plus three days for service by mail).

In the case at bar, Plaintiff-Father served his Rule 59 motion for a new trial on 12 April 2017, two days after receiving a copy of the order. Thus, his motion was timely served. Moreover, we conclude that although Plaintiff-Father's motion was ultimately unsuccessful, it was nevertheless sufficient to toll the thirty-day period for noticing an appeal. Because the trial court entered its order on Plaintiff-Father's Rule 59 motion and sanctions on 8 December 2017, his appeal to this Court on 15 December 2017 was timely.

B.      Standard of Review

On review of a child custody matter,

> the trial court's findings of fact are conclusive on appeal if supported by substantial evidence, even if there is sufficient evidence to support contrary findings. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Unchallenged findings of fact are binding on appeal. The trial court's conclusions of law must be supported by adequate findings of fact. Absent an abuse of discretion, the trial court's decision in matters of child custody should not be upset on appeal.

*Carpenter v. Carpenter*, 225 N.C. App. 269, 270, 737 S.E.2d 783, 785 (2013) (citation omitted).

"Our trial courts are vested with broad discretion in child custody matters. This discretion is based upon the trial courts' opportunity to see the parties; to hear the witnesses; and to detect tenors, tones, and flavors that are lost in the bare printed record[.]" *Huml v. Huml*, ___ N.C. App. ___, ___, 826 S.E.2d 532, 541 (2019) (citation omitted).

C.      Child Custody Order

In the instant case, Plaintiff-Father contends that the following findings of fact are not supported by competent evidence: 9, 10, 15, 17, 18, 19, 20, 21, 24, and 27.

> 9. Plaintiff[-Father] filed a complaint seeking emergency custody in this case in 2015 with an allegation that Defendant[-Mother] threatened to kill herself and other allegations against her. However, he took the stand during this hearing and testified there were no problems and that

the parties should share joint custody. The court finds this troubling and that if the allegations in the complaint were of a real concern to Plaintiff[-Father], he would have testified as such and attempted to convince the court that Defendant[-Mother] is a problem. Therefore, the [c]ourt finds that Plaintiff[-Father's] claims in the complaint about Defendant[-Mother are] not credible.

10. Plaintiff[-Father] committed acts of domestic violence against Defendant[-Mother], including one incident where he left a scar on her forearm. He also punched holes in the wall.

. . . .

15. . . . Plaintiff[-Father] spends significant time playing cricket. The [c]ourt has no issue with Plaintiff[-Father] enjoying himself and blowing off steam; however, if he is going to be out seven or eight hours playing cricket or some other activity, the child should be with his mother if she is available to provide care.

. . . .

17. Defendant[-Mother] was the primary caretaker of the child prior to the parties' separation.

18. Since the separation, . . . Defendant[-Mother] has taken care of the child while in her care and it is unclear to the [c]ourt whether Plaintiff[-Father] or his parents have been the primary caretaker while in his care.

19. The court is concerned about . . . Plaintiff[-Father's] request for emergency custody. The [c]ourt signed an ex-parte emergency custody order primarily to address the alleged threat that Defendant[-Mother] would remove the child from the country. Plaintiff[-Father] alleged that Defendant[-Mother] could telecommute from India, which was untrue and the [c]ourt also finds that . . . Plaintiff[-Father] continued with his façade in the Emergency

complaint that he is spending or wants to spend as much time with the child as possible. There is also no credible evidence presented at the trial of this matter that Defendant[-Mother] was a flight risk with the minor child. In fact, Defendant[-Mother] traveled to India with the child in 2015 and brought him back to North Carolina.

20. Plaintiff[-Father] alleged family tensions and a property dispute in India as the reasons the minor child should not be allowed to be taken to India. The [c]ourt does not find this concern to be credible. They both traveled to India separately with the child in 2015. They both have family in India. Plaintiff[-Father] did not allege during the trial that he had any concern that Defendant[-Mother] would attempt to keep the minor child in India and not return [the child] to the United States.

21. The [c]ourt is concerned that Plaintiff[-Father's] mother and father may be a source of tension in . . . Plaintiff[-Father's] home. The [c]ourt finds Defendant[-Mother's] contention credible that the child's paternal grandparents are more hostile than the maternal grandparents.

. . . .

24. In Plaintiff[-Father's] home, the minor child has either been sleeping on the floor in [the] hallway or with Plaintiff[-Father's] parents in their bed. Plaintiff[-Father's] arrangement in his home is not suitable for a continued fifty-fifty physical custody schedule.

. . . .

27. While there is this litigious issue going on in India over real property there, the court does not find that there is any weight to the concern expressed by Plaintiff[-Father] . . . of this child being exposed to that. In fact, the [c]ourt believes that the child cannot be any more exposed to it than he already is living with the paternal grandparents in

> Plaintiff[-Father's] home. There should be no restrictions on either parent's ability to travel to India with their minor child.

A review of the record and trial transcript reveals that each of these findings is supported by competent evidence. We group the challenged findings by their underlying subject-matter.

### 1. *Findings Related to Plaintiff-Father's Behavior*

Findings of fact 9, 10, 15, and 19 focus on Plaintiff-Father's behavior, and each was supported by competent evidence at trial.

Plaintiff-Father challenges findings of fact 9 and 19, regarding the veracity and sincerity of Plaintiff-Father's allegations in support of his request for emergency custody. These findings were amply supported by competent evidence at trial. Plaintiff-Father's fear that Defendant-Mother was suicidal, along with the other very troubling allegations of his complaint, was not consonant with his testimony that he was seeking "50-50 custody[ ] moving forward," or his failure to testify regarding those allegations at trial.

In addition, Plaintiff-Father's concern that Defendant-Mother would flee to India with the child and telecommute was not supported by the evidence at trial. Plaintiff-Father did not dispute Defendant-Mother's testimony that she could not telecommute from India. Indeed, in Plaintiff-Father's opening statement, his counsel affirmatively explained that Plaintiff-Father's "concern, at least as he set out in his

discovery responses, was not that [Defendant-Mother] would keep the child in India. That's not the concern. It's not a flight issue."

The trial court's finding of fact 10, that Plaintiff-Father had committed acts of domestic violence, was also supported by competent evidence. Plaintiff-Father contends that this finding was based on erroneously admitted police reports. Assuming, *arguendo*, that the police reports were admitted into evidence in error, this finding was supported by ample other evidence at trial. Defendant-Mother testified that Plaintiff-Father punched the wall and hit her on a number of occasions, and that at least one of those acts of domestic violence occurred in the minor child's presence. Plaintiff-Father did not testify to the contrary.

Plaintiff-Father also challenges finding of fact 15, in which the trial court found that he "spends significant time playing cricket," during which time Defendant-Mother should be permitted to care for the child rather than a third party. The parties both provided competent evidence to support this finding. Although he argues on appeal that "he spent less than 1% of his Custodial time in playing Cricket," Plaintiff-Father testified that cricket matches can last anywhere from three to seven hours. Defendant-Mother and another witness also testified to the substantial amount of time that Plaintiff-Father spends playing cricket.

In short, each of these challenged findings was supported by competent evidence.

### 2. *Findings Related to Travel to India*

Findings of fact 20 and 27 address Plaintiff-Father's concerns about "family tensions and a property dispute in India as the reasons the minor child should not be allowed to be taken to India." Each finding was supported by competent evidence at trial.

On appeal, Plaintiff-Father argues that, in not finding his concerns to be credible, the "[t]rial court's reasoning here is defective," because the trial court improperly judged "the credibility of [his] concern" and did not afford the affidavits he submitted from the tenants in India the weight to which he thinks they were entitled. However, while the tenants attested to the maternal grandmother's verbal abuse of them in the presence of the child, Plaintiff-Father testified that *he was not concerned* about Defendant-Mother traveling with the child to India.

"Although a party may disagree with the trial court's credibility and weight determinations, those determinations are solely within the province of the trial court." *Kabasan v. Kabasan,* 257 N.C. App. 436, 471, 810 S.E.2d 691, 713 (2018) (citation omitted). Accordingly, both of these findings are supported by competent evidence.

### 3. *Findings Related to the Minor Child's Care*

Findings of fact 17, 18, 21, and 24 deal with the child's care and living situation, and each finding was supported by competent evidence at trial.

The trial court found that Defendant-Mother cares for the child when he is in her physical custody, but that it was unclear whether Plaintiff-Father or his parents care for the child when he is in Plaintiff-Father's physical custody. Defendant-Mother testified at trial that Plaintiff-Father's parents were caring for the minor child more than Plaintiff-Father was admitting: Plaintiff-Father is not "taking care of the baby by himself. Even now, he is depending on his parents. So I doubt if he can put that extra effort as a single parent to take care of [the child] because he didn't do it on his own . . . for about a year now," since his parents moved to the United States. Finding of fact 18 is supported by competent evidence.

Defendant-Mother's testimony also supports finding of fact 21, that the paternal grandparents "may be a source of the tension in [Plaintiff-Father's] home." The trial court explicitly stated that it found Defendant-Mother's "contention credible that the child's paternal grandparents are more hostile than the maternal grandparents." This is the trial court's prerogative. *See id.* at 440, 810 S.E.2d at 696. Thus, this finding is supported by competent evidence.

Plaintiff-Father also challenges finding of fact 24, regarding the minor child's sleeping arrangements while in the physical custody of Plaintiff-Father. He and his parents live in a 1,000 square foot, one-bedroom apartment, and his parents sleep in the bedroom. When questioned about the minor child's sleeping arrangements, Plaintiff-Father testified that "we sleep in the bedroom, and sometimes we sleep in

the hall." He explained that he would make a separate bed for the minor child if they were to sleep in the hall, but that most of the time the child stays in the bedroom and shares the bed with Plaintiff-Father's parents. Plaintiff-Father asserted in his Rule 59 motion—as well as on appeal—that "hall" in Indian culture actually refers to a living room. However, he failed to correct his testimony at the hearing, or to explain why that was materially different than sleeping in the hall. Hence, this finding is supported by competent evidence.

Finally, although Plaintiff-Father's challenge to finding of fact 17, that Defendant-Mother has been the primary caretaker for the child, appears to have been abandoned, it was supported by Defendant-Mother's testimony that she "ha[d] been the primary caregiver of the child ever since he was born." This finding is supported by competent evidence.

### 4. *Summary of Challenged Findings*

Each of the challenged findings of fact is supported by competent evidence. Indeed, many of the findings are based directly on Plaintiff-Father's testimony. In sum, Plaintiff-Father generally contends that the trial court erred by overlooking evidence that he presented at trial, or by making a credibility determination with which he disagrees. These arguments go to the weight to be given to the evidence, and to evaluations of credibility which are within the discretion of the trial court. "[W]here the trial court's findings of fact are supported by competent evidence, and

the findings of fact, in turn, support the trial court's conclusions of law, the decision of the trial court will be affirmed. *This Court will not reweigh the evidence.*" *Id.* (citation omitted) (emphasis added). Plaintiff-Father's challenges to these findings of fact must therefore fail.

## VI. Child Support Guidelines

Lastly, we return to the child support order, in which the trial court found it "reasonable to use 125 overnights for [Plaintiff-Father] and 240 overnights for [Defendant-Mother] for purposes of calculations under the child support guidelines." Defendant-Mother asserts that the trial court erred in using Worksheet B to calculate Plaintiff-Father's prospective child support obligation. More specifically, she argues that "there was no evidence presented from which the trial court could find that 125 overnights [with Plaintiff-Father] was a reasonable number of overnights to use" in determining Plaintiff-Father's child support obligation.

### A.    *Appellate Jurisdiction*

This matter is properly addressed by cross-appeal, in that Defendant-Mother "seek[s] affirmative relief in the appellate division[,]" *Alberti v. Manufactured Homes, Inc.*, 329 N.C. 727, 739, 407 S.E.2d 819, 826 (1991), from a child support order that she contends was entered in error. *See Harllee v. Harllee*, 151 N.C. App. 40, 51, 565 S.E.2d 678, 684 (2002) ("[T]he proper procedure for presenting alleged errors that

purport to show that the judgment was erroneously entered and that an altogether different kind of judgment should have been entered is a cross-appeal.").

Although Defendant-Mother failed to timely cross-appeal from the child support order, this Court has the discretion to issue a writ of certiorari "in appropriate circumstances . . . to permit review of the judgments and orders of trial tribunals when the right to prosecute an appeal has been lost by failure to take timely action," N.C.R. App. P. 21(a)(1), including review of the merits of a cross-appeal. *See Ehrenhaus v. Baker*, 243 N.C. App. 17, 32, 776 S.E.2d 699, 709 (2015). Defendant-Mother petitioned for writ of certiorari, and has shown good and sufficient cause for this Court to issue the writ. Accordingly, in our discretion, we allow the writ.

### B. *Standard of Review*

A trial court's child support order is "accorded substantial deference by appellate courts and our review is limited to a determination of whether there was a clear abuse of discretion. To support a reversal, an appellant must show that the trial court's actions were manifestly unsupported by reason." *Head v. Mosier*, 197 N.C. App. 328, 332, 677 S.E.2d 191, 195 (2009) (internal quotation marks and citations omitted). "Failure to follow the [Child Support G]uidelines constitutes reversible error." *Rose v. Rose*, 108 N.C. App. 90, 93, 422 S.E.2d 446, 447 (1992).

### C. *Child Support Guidelines*

It is well settled that "[t]he court shall determine the amount of child support payments by applying the presumptive guidelines. The Guidelines apply as a rebuttable presumption in all legal proceedings involving the child support obligation of a parent." *Hart v. Hart*, ___ N.C. App. ___, ___, 836 S.E.2d 244, 251 (2019) (citations and internal quotation marks omitted). The Guidelines provide that Worksheet A is to be used "when one parent . . . has primary physical custody of all of the children for whom support is being determined. A parent (or third party) has primary physical custody of a child if the child lives with that parent (or custodian) for 243 nights or more during the year"; the use of Worksheet B is appropriate when both "[p]arents share custody of a child if the child lives with each parent for at least 123 nights during the year and each parent assumes financial responsibility for the child's expenses during the time the child lives with that parent." *Guidelines*, Ann. R. 5.

Here, Defendant-Mother contends that the trial court erred in using Worksheet B to calculate Plaintiff-Father's prospective child support obligation. She challenges finding of fact 10 as not being supported by competent evidence at trial:

> 10. For the period February 2017 to July 2017 based upon the custody order entered by the [c]ourt, the court finds it reasonable to use 125 over nights for the [Plaintiff-Father] and 240 overnights for the [Defendant-Mother] for purposes of calculations under the child support guidelines.

Defendant Mother argues that "the evidence presented suggested that the correct number of overnights was 261 for [Defendant-Mother] and 104 for [Plaintiff Father]."

The child custody order served as the basis for the trial court's use of Worksheet B in calculating the prospective child support obligation. To accommodate the parties' commitment to regularly travel to India with the minor child, the order permits each parent to have physical custody of the child for five weeks of uninterrupted international travel per year. Plaintiff-Father argued at the child support hearing that the use of Worksheet B to calculate his child support obligation was proper because of the annual five-week extended visitation period. Including the five-week extended visitation, Plaintiff-Father calculated that he had 128 days in 2017, 129 days in 2018, and 124 days in 2019. However, the parties' extensive travel plans do not necessarily justify the use of Worksheet B.

It is not appropriate to use Worksheet B in cases involving extended visitation. The explicit instructions set forth on Worksheet B[3] address the issue of extended visitation: "Worksheet B should be used only if both parents have custody of the child(ren) for at least one-third of the year *and the situation involves a true sharing of expenses, rather than extended visitation* with one parent that exceeds 122 overnights." Form AOC-CV-628, Side Two, Rev. 1/15 (emphases added).[4] If the trips to India are extended visitation, rather than a "situation involv[ing] a true sharing of expenses" as contemplated by the instructions for Worksheet B, that travel time

---

[3] This Court has previously referenced the instructions on Worksheet B in determining whether its use was appropriate. *See, e.g., Scotland Cty. Dep't of Soc. Servs. v. Powell,* 155 N.C. App. 531, 539, 573 S.E.2d 694, 699 (2002).

[4] The identical language remains in the January 2019 iteration of Worksheet B.

should not be included in determining the number of overnights the child would stay with each parent.

Accordingly, we vacate the child support order, and remand for the trial court to make additional findings as to whether the number of overnights that the minor child has with Plaintiff-Father exceeds 122 overnights, and if so, whether that is the result of extended visitation or whether the custodial arrangement is a "situation involv[ing] a true sharing of expenses." Whether additional evidence or a hearing is necessary, or whether the case may be decided based on the existing record, is in the discretion of the trial court.

## *Conclusion*

For the reasons stated herein, we vacate the 20 November 2017 child support order and remand for further proceedings consistent with this opinion. We also reverse that part of the 8 December 2017 order imposing Rule 11 sanctions. The remainder of the 8 December 2017 order and the 31 March 2017 custody order are affirmed.

AFFIRMED IN PART; REVERSED IN PART; VACATED IN PART AND REMANDED.

Judges ARROWOOD and HAMPSON concur.